**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Ian R. Bensberg (*pro hac vice*)
ibensberg@lchb.com
275 Battery Street, 29th Floor San
Francisco, CA 94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
Nicholas Diamand (*pro hac vice*)
ndiamand@lchb.com
Douglas Cuthbertson (*pro hac vice*)
dcuthbertson@lchb.com
250 Hudson Street, 8th Floor New
York, NY 10013 Telephone:
212.355.9500
Facsimile:  212.355.9592

*Counsel for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| JONATHAN DIAZ and LEWIS BORNMANN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No.: 5:21-cv-03080-NC<br><br>**PLAINTIFFS' BRIEF IN SUPPORT OF PRELIMINARY SETTLEMENT APPROVAL** |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT ................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 2

I.   INTRODUCTION ......................................................................................................... 2

II.  FACTUAL BACKGROUND ....................................................................................... 2

III. PROCEDURAL HISTORY .......................................................................................... 5

    A.   Pleadings, Motion Practice, and Early Discovery.............................................. 5

    B.   The Parties Design a Collaborative and Rigorous Early Resolution Process to Explore Resolving Plaintiffs' Claims. .............................................................. 6

    C.   The Parties Mediate before Judge Ambler.......................................................... 7

IV.  THE SETTLEMENT ................................................................................................... 7

V.   LEGAL STANDARD ................................................................................................ 10

VI.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE....................... 10

    A.   The Class Has Been Vigorously Represented................................................... 11

    B.   The Settlement Was Negotiated at Arm's Length. ........................................... 11

    C.   The Settlement Provides Meaningful Relief to the Settlement Class. .............. 12

        1.   The Costs, Risks, and Delay of Trial And Appeal.................................... 12

        2.   Counsel Will Seek Reasonable Attorneys' Fees and Expenses................ 14

    D.   The Settlement Treats Class Members Equitably. ............................................ 14

    E.   The Settlement Satisfies the District's Procedural Guidance. ........................... 15

        1.   The Releases Mirror the Allegations in the Amended Complaint (Procedural Guidance 1(c))........................................................................ 15

        2.   Settlement Administration Selection Process (Procedural Guidance 2) ............................................................................................................... 16

        3.   The Proposed Notice Plan (Procedural Guidance 3 & 5). ........................ 17

        4.   Service Awards (Procedural Guidance 7)................................................. 18

        5.   CAFA Notice (Procedural Guidance 10) .................................................. 19

        6.   Electronic Versions (Procedural Guidance 12)........................................ 19

VII. THE SETTLEMENT CLASS WARRANT CERTIFICATION. .................................. 19

        1.   Rule 23(a) is Satisfied ............................................................................. 19

        2.   The Requirements of Rule 23(b)(2) are Satisfied .................................... 21

VIII. PROPOSED SCHEDULE FOR NOTICE AND FINAL APPROVAL ......................... 21

IX.  CONCLUSION ......................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001)...................................................................................... 20

*Beltran v. Olam Spices & Vegetables Inc.*, 2021 WL 2284465, at \*14 (E.D. Cal. June 4, 2021),
*report and recommendation adopted by* 2021 WL 4318141 (E.D. Cal. Sept. 23, 2021) .......... 12

*Camilo v. Ozuna*,
2020 WL 1557428(N.D. Cal. Apr. 1, 2020) ................................................................ 12

*Campbell v. Facebook*,
315 F.R.D. 250 (N.D. Cal. 2016)................................................................................ 21

*Campbell v. Facebook*,
No. 4:13-05996-PJH-SK (N.D. Cal. Apr. 26, 2017)..................................................... 21

*Churchill Vill. L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004)...................................................................................... 18

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011)............................................................................... 10, 12

*In re Facebook Biometric Info. Privacy Litig.*,
326 F.R.D. 535 (N.D. Cal. 2018)................................................................................ 20

*In re Vizio, Inc., Consumer Privacy Litig.*,
No. 8:16-ml-02693 (C.D. Cal. Jan. 4, 2019)................................................................ 20

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.*,
2017 WL 672727 (N.D. Cal. Feb. 16, 2017) ............................................................... 20

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
2019 WL 387322 (N.D. Cal. Jan. 30, 2019) ................................................................ 18

*Jordan v. Los Angeles Cty.*,
669 F.2d 1311 (9th Cir. 1982)..................................................................................... 20

*Matera v. Google Inc.*,
No. 5:15-cv-04062-LHK (N.D. Cal. Aug. 31, 2017)..................................................... 21

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2010)..................................................................................... 21

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009)...................................................................................... 19

*Roes, 1–2 v. SFBSC Mgmt. LLC*,
944 F.3d 1035 (9th Cir. 2019).............................................................................. 10, 12

*Saucillo v. Peck*,
25 F.4th 1118 (9th Cir. 2022) .................................................................................... 10

*The Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*,
2016 WL 314400 (N.D. Cal. Jan. 25, 2016) ............................................................... 19

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)............................................................................................. 17, 20

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

**STATUTES**

4

28 U.S.C. § 1715 ........................................................................................ 19

5

**RULES**

6

Fed. R. Civ. P 15(a)(1) ................................................................................ 5

7

Fed. R. Civ. P. 23 ...................................................................................... 17

Fed. R. Civ. P. 23(a)(2) ............................................................................. 20

8

Fed. R. Civ. P. 23(a)(3) ............................................................................. 20

9

Fed. R. Civ. P. 23(a)(4) ............................................................................. 20

Fed. R. Civ. P. 23(b)(2) ............................................................................. 21

10

Fed. R. Civ. P. 23(c)(2) ....................................................................... 17, 18

11

Fed. R. Civ. P. 23(e)(1)(B) ........................................................................ 10

12

Fed. R. Civ. P. 23(e)(1)(B)(ii) ................................................................... 19

Fed. R. Civ. P. 23(e)(2) ............................................................................. 10

13

Fed. R. Civ. P. 23(e)(2)(C) ........................................................................ 12

14

Fed. R. Civ. P. 23(e)(2)(C)(ii) ................................................................... 12

15

Fed. R. Civ. P. 23(e)(2)(C)(iv) .................................................................. 12

Fed. R. Civ. P. 23(e)(4) ............................................................................. 10

16

Fed. R. Civ. P. 23(e)(5) ............................................................................. 10

17

Fed. R. Evid. 408 ........................................................................................ 6

18

Local Civil Rule 7.2(c) .............................................................................. 21

19

20

21

22

23

24

25

26

27

28

1

## <u>NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>

2

3    PLEASE TAKE NOTICE that on June 22, 2022 at 1:00 p.m. by Zoom webinar, Plaintiffs

4   will and hereby do move the Court for an order granting preliminary approval of the proposed

5   settlement with Defendant in this action.

6    Plaintiffs request that the Court: (1) find it will likely approve the Settlement; (2) find it

7   will likely certify the Settlement Class; (3) appoint Plaintiffs as Class Representatives for the

8   Settlement Class for purposes of disseminating notice; (4) appoint Michael W. Sobol and Douglas

9   I. Cuthbertson of Lieff, Cabraser, Heimann & Bernstein, LLP as counsel for the Settlement Class;

10   (5) direct notice to the Settlement Class in connection with the Settlement, and approve the form

11   and manner thereof; (6) authorize retention of KKC LLC as Settlement Administrator; and (7) set

12   a schedule for final approval of the Settlement and Class Counsel's request for attorneys' fees and

13   expenses.  This motion is supported by the attached Memorandum of Points and Authorities, the

14   attached Declarations of Douglas I. Cuthbertson, David R. Choffnes, and Carla A. Peak, as well

15   as all papers and records on file in this matter, and such other matters as the Court may consider.

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiffs respectfully submit for the Court's approval a proposed Class Action Settlement Agreement (the "Settlement"), which resolves Plaintiffs' claims against Defendant Google LLC ("Google" or "Defendant"), alleging that Google fundamentally erred when it unlawfully exposed confidential medical information and personally identifying information through its digital contract tracing system designed by Google to slow or stop the spread of COVID-19 on mobile devices using Google's Android operating system.

The Settlement satisfies the requirements for preliminary approval.  It balances immediate injunctive relief with the risks of further litigation, and members of the Settlement Class will release no monetary claims.  Further, the Settlement is well-informed by a comprehensive pre-filing investigation that included a detailed forensic analysis, as well as a novel early resolution process involving Plaintiffs and Plaintiffs' consulting expert's review of highly confidential information from Google, which generated legally-binding representations and warranties by Google that form a core component of the Settlement.  Finally, the Settlement is the product of arm's length, non-collusive negotiations aided by experienced mediator, Judge Read Ambler (Ret.).  While class notice is not mandatory under Rule 23(b)(2), the parties propose a robust online notice campaign and a settlement website.  The Settlement should be approved.

### II. FACTUAL BACKGROUND

In 2020 when COVID-19 spread throughout the globe, public health authorities in the United States and elsewhere worked to protect the public, including by implementing "contact tracing," a method of discerning possible exposure to persons who contracted the virus so that the exposed persons could take precautions for their safety and the safety of others.  *See* Dkt. 25 (Am. Compl.) ¶¶ 6-9.  Generally speaking, contact tracing is a process used to identify people who have come into contact with an infected person in order to observe them for signs of infection and, if necessary, to isolate and treat them, and to prevent the spread of disease to others.  *Id.*, ¶¶ 10-11.  Effective contact tracing requires the voluntary participation of members of the general public who are willing to share, on a strictly confidential basis, their health status and location

1   information.

2       Defendant Google, together with Apple, Inc., developed a system for digital "contact

3   tracing," called the Google-Apple Exposure Notification System for use with the many mobile

4   devices that use either Google's Android or Apple's IOS operating systems.  *Id.*, ¶ 12.  Google

5   made its Exposure Notification system available to public health authorities in May 2020 for use

6   in Android devices (referred to herein as the "EN System").[1]  *See* Am. Compl., ¶ 13.  The EN

7   System allowed state-level public health authorities to build mobile contact tracing applications

8   ("Contact Tracing Apps"), which users could then download and use to identify possible

9   exposure to persons infected with COVID-19.  *Id.*, ¶¶ 14-15, 18, 20.  As of March 2021, more

10  than 28 million people had downloaded Contact Tracing Apps in the United States or otherwise

11  activated exposure notifications on their mobile devices.  *Id.*, ¶ 19.

12      In general, the EN System works as follows.  First, users who activated the system will

13  automatically cause their mobile devices to regularly broadcast and record unique, random-

14  seeming sequences of characters and device identifiers via their Bluetooth radio to other

15  participating users within Bluetooth range (approximately 30 feet).  *Id.*, ¶¶ 26-35.  Second, any

16  user who receives a positive COVID-19 diagnosis from a medical professional, with approval

17

18  

19

20

21

22

23

24

25

26

27

28  _____

[1] The Settlement Agreement defines the EN System as Google's Exposure Notifications APIs and/or Google's Template EN Express App.  *See* Cuthbertson Decl., Ex. 1 (Settlement Agreement), ¶ 1.5.

from the local public health authority, may choose to input her positive diagnosis into her device, alerting the EN System.  *Id.*, ¶ 37.   For example, the app used in California ("CA Notify") would display the following screen to allow a user to "[s]hare [her] COVID-19 test result."  *Id.*, ¶ 38. Third, other EN System users who previously came into contact with the COVID-19-positive user will receive an anonymous "exposure notification," so that they may seek treatment and take steps to limit the virus's spread.  *Id.*, ¶¶ 39-43.

By its nature, the EN System requires that its users allow use of their sensitive health information, general location information, and information about users' relative location to infected persons.  To facilitate the mass voluntary participation that the EN System requires to be effective, the EN System was ostensibly designed to ensure the confidentiality and privacy of users' sensitive and private information.  *Id.*, ¶ 46.  Google represented that any data generated by the EN System never left a user's Android device and that the identities of users and their COVID-19 status would remain anonymous, and would not be collected by Google or shared with other users.  *Id.*, ¶¶ 44-45, 47-48.  The efficacy and reliability of the EN System depended on the truth of these statements.

Plaintiffs allege, however, that Google fundamentally erred in its design and implementation of its EN System by leaving users' private health information unprotected on Android device "system logs"[2] to which Google and third party app developers had routine access.  *Id.*, ¶¶ 50-51, 55-59, 69.  Google did so even though it recognized that it was a best practice to not log sensitive or personally identifiable information to system logs unless necessary for app functionality.  *Id.*, ¶¶ 71, 74.  Based on detailed forensic analysis (*see* Cuthbertson Decl., ¶ 3), Plaintiffs described specific data comprising personally identifiable information and data showing positive COVID-19 diagnoses that were logged on Android system logs and transmitted side-by-side to Google's servers from users who participated in the EN system.  *See* Am. Compl., ¶¶ 91-111.  By virtue of this fundamental error, Google breached its commitments regarding user privacy, which were necessary for ensuring users' participation and thus the efficacy of the EN

---

[2] System logs store information on individual mobile devices for a variety of purposes, including for "crash reporting."  *Id.*, ¶¶ 50-51, 56-59.

1 System.  *See id.* ¶¶ 91-111.

2 Plaintiffs alleged that although Google became aware of this problem in or around

3 February 2021, it failed to inform the general public or to satisfactorily address the security flaws

4 to prevent the problems moving forward.  *Id.*, ¶¶ 115-23.

5 **III.    PROCEDURAL HISTORY**

6 **A.    Pleadings**, **Motion Practice**, **and Early Discovery**

7 Plaintiffs filed their initial complaint on April 27, 2021.  *See* Dkt. 1.  On June 29, 2021,

8 Google filed a motion to dismiss (*see* Dkt. 18), and on July 20, 2021, Plaintiffs filed an amended

9 complaint as of course pursuant to Fed. R. Civ. P 15(a)(1).  Both the initial and amended

10 complaints defined the class as "[a]ll natural persons in the United States who downloaded or

11 activated a contact tracing app incorporating the Google-Apple Exposure Notification System on

12 their mobile device," and included a California subclass, defined as "[a]ll natural persons in

13 California who are members of the Class."  *See* Dkt. 1 (Compl.), ¶ 93, Dkt. 25 (Am. Compl.), ¶

14 143.  Both complaints included common-law privacy claims for intrusion upon seclusion and

15 public disclosure claims under California law and the California Constitution, as well as one

16 statutory claim providing for statutory damages, under California's Confidentiality of Medical

17 Information Act (CMIA).  *See* Dkt. 1 (Compl.), ¶¶ 98-146, Dkt. 25 (Am. Compl.), ¶¶ 148-198.

18 The Parties conducted a Rule 26(f) conference on July 6, 2021 and Plaintiffs served

19 formal discovery on August 20, 2021, after the Court issued a limited case management

20 scheduling order allowing discovery to proceed.  *See* Dkt. 34.  The Parties then negotiated (and

21 partially litigated) a protective order and ESI protocol, which the Court granted.  *See* Dkts. 46 &

22 50.  The Parties agreed to stay formal discovery pending the early resolution efforts described

23 below.

24 On August 25, 2021, Google filed its motion to dismiss the amended complaint and an

25 accompanying request for judicial notice.  *See* Dkts. 37 & 38.  Shortly before Plaintiffs were to

26 file their motion to dismiss opposition brief, the Court agreed to extend the remaining motion to

27 dismiss deadlines to provide the Parties the opportunity to develop "an informal but collaborative

28 discovery process that may resolve many of the pending issues raised in Google's motion to

dismiss." Dkt. 48.  The Court subsequently extended those deadlines to facilitate the process described below that resulted in the proposed settlement.  *See* Dkts. 52, 54, 56, 58.

>   **B.**     **The Parties Design a Collaborative and Rigorous Early Resolution Process to Explore Resolving Plaintiffs' Claims.**

In August 2021, the Parties began to explore early resolution of this matter, after Google explained that it believed it had resolved the privacy concerns stemming from the alleged design flaw of the EN System that formed the basis of Plaintiffs' claims.  *See* Cuthbertson Decl., ¶ 4; *see also id.*, Ex. 1 (Settlement Agreement), ¶ 3.1 ("Google has taken several measures to remedy what Plaintiffs allege to be a security vulnerability in its EN System made known to Google and then raised by Plaintiffs in their Amended Complaint in this Lawsuit.").  As part of that process, Plaintiffs demanded extensive factual disclosure necessary to reach an informed judgment about Google's understanding and investigation of the issue and whether Google made the technological changes necessary to remedy the alleged fundamental error in the EN System. Cuthbertson Decl., ¶ 5.

In September 2021, Plaintiffs proposed that their consulting expert be allowed to speak with and question a Google representative on a number of highly relevant technical issues in an informal setting under the auspices of F.R.E. 408.  *Id.*, ¶ 6.  This would allow for a more efficient and expeditious exchange of information than a formal deposition, while ensuring that any confidential information conveyed by Google would remain protected as a settlement communication.  *Id.*   Google agreed, and in September and October 11, 2021, the Parties negotiated the scope of and procedures for this informational session, including the list of topics Plaintiffs' consulting expert could address.  *Id.*, ¶ 7.  Plaintiffs' consulting expert conducted the session on November 22, 2021, where he asked and had answered numerous technical questions concerning Plaintiffs' allegations, the past and current architecture of the EN System, and Google's practices relating to the treatment of data generated by the EN System.  *See id.*, ¶ 8; Declaration of David R. Choffnes ("Choffnes Decl."), ¶ 3.

In December 2021 and January 2022, upon Plaintiffs' request, Google provided additional highly confidential written information and materials in response to follow-up questions asked by

1   Plaintiffs' counsel in consultation with their consulting expert.  *Id.*, ¶ 4.  After reviewing and

2   analyzing those written materials, as well as the information conveyed during the November

3   exchange, Plaintiffs determined that there was sufficient grounds to attempt to mediate this

4   matter.  Cuthbertson Decl., ¶ 9.

5            **C.      The Parties Mediate before Judge Ambler.**

6            The Parties agreed to mediate this case before the Hon. Read Ambler (Ret.) of JAMS.

7   Cuthbertson Decl., ¶ 10.  After submitting their respective mediation statements, the Parties

8   conducted three mediation sessions remotely via Zoom on January 31, 2022, February 7, 2022,

9   and February 11, 2022, exchanging proposed terms of the Settlement with Judge Ambler's

10  guidance.  *Id.*, ¶ 11.  Between mediation sessions, the Parties continued to exchange proposals on

11  outstanding points of dispute via Judge Ambler, who provided continued direction and

12  supervision of the Parties' efforts.  *Id.*, ¶ 12.  The Parties reached a tentative agreement on

13  February 18, 2022, and notified the Court of the same.  *See* Dkt. 59.  The Court then stayed the

14  case pending approval of the Settlement.  *See* Dkt. 60.

15  **IV.    THE SETTLEMENT**

16           The proposed settlement with Google provides meaningful business practice changes and

17  critical future commitments that address the fundamental error in the EN System alleged in

18  Plaintiffs' Amended Complaint as to Google.  *See* Section II. above (describing Plaintiffs'

19  allegations).  Crucially, Plaintiffs' and their expert's opinion that Google has satisfactorily

20  investigated and remedied any consequences of the alleged security vulnerabilities is based on

21  legally-binding representations and warranties from Google that form a critical part of this

22  Settlement.  As explained above (*see* section III. B.), Plaintiffs' consulting expert's live exchange

23  of information with Google and subsequent exchange and analysis of highly confidential written

24  information and materials, provided Plaintiffs with the ability and opportunity to craft an effective

25  settlement.  *See* Choffnes Decl., ¶ 5 ("After reviewing and analyzing [Google's] written

26  materials, and in reliance upon what I learned during the [live] exchange, as well as the

27  representations and warranties made by Google . . . , I believe that the remedial measures taken

28  by Google and the injunctive relief agreed to as part of the proposed settlement address Plaintiffs'

1  alleged security vulnerabilities in Google's EN System as to Google.").

2        First, Google has taken several measures to remedy the security vulnerabilities in its EN

3  System made known to Google and then raised by Plaintiffs in their complaints.  These remedial

4  measures, which Google acknowledges were taken in response to the issues concerning the EN

5  System that are the same as those raised by Plaintiffs, include: (1) software code changes Google

6  rolled out to EN System users on April 21, May 5, and May 26, 2021, to improve how technical

7  information is logged to Android system logs to provide additional privacy protection for users of

8  contact tracing apps, and (2) implementing and completing a process designed to search for and

9  eliminate EN System data Google may find within its databases.  *See* Cuthbertson Decl., Ex. 1

10  (Settlement Agreement), ¶ 3.1.  These measures, as confirmed by Plaintiffs' consulting expert,

11  would prevent the alleged logging and collection of personally identifying information alongside

12  EN System users' COVID-19 status.

13        Second, upon execution of the Settlement Agreement, Google will represent and warrant

14  that the following statements are true:

15      •  Google does not place any data in Android mobile device system logs generated

16          by Google's EN System from which a particular user's health status could be

17          inferred, even if another party knew to whom the system log belongs. This

18          includes representing that "log lines" created by the EN System would not allow a

19          third party to understand or infer any meaning concerning a user's COVID status.

20          *See id.*, ¶ 4.1;

21      •  Google has implemented and completed a process designed to review its system

22          for the information alleged in Plaintiffs' Amended Complaint and eliminate EN

23          System data it may find within its databases, as noted above.  *See id.*, ¶ 4.2;

24      •  Google issued a "Partner Security Advisory" to third parties that may have had

25          access to Android mobile device system logs, explaining that Google had been

26          advised of the vulnerabilities alleged by Plaintiffs, that Google had issued a

27          relevant "fix," that Google "had no indication that these identifiers were used

28          inappropriately, such as to identify any users of Exposure Notifications," and that

1   Google had advised these third parties to eliminate any potentially sensitive

2   information collected without explicit user consent. *See id.*, ¶ 4.3.

3   • Google has evaluated the likelihood of access to and subsequent misuse of EN

4   System data logged to users' devices, and identified no evidence of abuse or

5   misuse by anyone of EN System data that was logged to device system logs. *See*

6   *id.*, ¶ 4.4.

7   • Google conducted an investigation revealing that no team at Google sought to or

8   attempted to link EN and non-EN System data contained in Android mobile device

9   system logs for any such use by Google, and that the investigation revealed no

10   attempts by Google employees or any unauthorized persons to connect EN System

11   data with any personally identifying information of any user for use by Google.

12   *See id.*, ¶ 4.5.

13   Third, as consideration for the complete and final settlement of this action, Google will

14   agree to and implement the following injunctive relief:

15   • Google shall not revert the software code changes described above. *See id.*, ¶ 5.1.

16   • Google shall confirm in writing that, after a good-faith, thorough search, it has

17   identified no EN System data on its internal systems from which any employee

18   could draw any inference about the health status of an EN user. *See id.*, ¶ 5.2.

19   • Google shall edit the following Google webpage on the EN System,

20   http://www.google.com/covid19/exposurenotifications/, to revise the "Exposure

21   Notifications and your privacy" section, to explain and describe the heightened

22   security and privacy protections that address the concerns that Plaintiffs raised in

23   this action and in their Amended Complaint. *See id.*, ¶ 5.3.

24   • Plaintiffs may seek from the Court an injunction to enforce the terms of the

25   Settlement Agreement, including Google's Representations and Warranties. *See*

26   *id.*, ¶ 5.4.

27   Importantly, the Settlement does not address claims for damages or other monetary relief

28   (*see id.*, ¶ 1.12), and only releases claims for injunctive relief that relate to the handling of

1   Google's EN System data on system logs, and not any claims concerning Google handling of any

2   other type of data on system logs.  *See* Cuthbertson Decl., ¶ 13.

3   **V.      LEGAL STANDARD**

4          Rule 23(e) of the Federal Rules of Civil Procedure requires a preliminary evaluation of a

5   proposed class action settlement, the first step in a three-stage process.  At this stage, the Court

6   must initially determine whether it "will likely be able to" (i) approve the settlement as fair,

7   reasonable, and adequate under the heightened standard applicable to pre-certification

8   settlements; and (ii) "certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P.

9   23(e)(1)(B).  Then, after potential class members are given notice and an opportunity to object,

10  the Court must hold a hearing to consider whether to approve the settlement under the heightened

11  standard and certify the settlement class.  *See* Fed. R. Civ. P. 23(e)(2), (4), (5).

12  **VI.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.**

13         In determining whether a proposed settlement initially appears fair, reasonable, and

14  adequate, the Court must consider whether (1) Plaintiffs and their Counsel have adequately

15  represented the class; (2) the Settlement was negotiated at arm's length; (3) the relief provided is

16  adequate; and (4) the Settlement treats class members equitably relative to each other.  Fed. R.

17  Civ. P. 23(e)(2); *see also* Procedural Guidance for Class Action Settlements, Preliminary

18  Approval ("Procedural Guidance") (instructing parties to submit specific information to the

19  Northern District of California).

20         As relevant here, the Ninth Circuit has specifically directed that courts weigh "the strength

21  of the plaintiff's case"; "the risk, expense, complexity, and likely duration of further litigation";

22  "the risk of maintaining class action status throughout the trial"; "the extent of discovery

23  completed and the stage of the proceedings"; and "the experience and views of counsel."  *In re*

24  *Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).  A settlement tendered

25  for approval before a class has been certified merits "extra caution and more rigorous scrutiny."

26  *Saucillo v. Peck*, 25 F.4th 1118, 1131 (9th Cir. 2022) (quoting *Roes*, *1–2 v. SFBSC Mgmt. LLC*,

27  944 F.3d 1035, 1048 (9th Cir. 2019)).

28         After considering and weighing these factors, the Settlement should be approved.

### A.     The Class Has Been Vigorously Represented.

For over the past year, Plaintiffs and their Counsel have diligently and zealously represented the interests of the Settlement Class.  Before Plaintiffs commenced this action, Counsel conducted a thorough forensic investigation into the nature of the security vulnerabilities they observed in the EN System and the possible consequences thereof, and researched the applicable privacy law and California state law that protects the confidentiality of individually identifiable medical information.  Cuthbertson Decl., ¶ 14.  Plaintiffs drafted and filed two complaints in support of their claims (*see* Dkts. 1 & 25), and started discovery by conducting a Rule 26(f) conference, serving initial disclosures and an initial round of Requests for Production and Interrogatories, and negotiating and litigating an ESI Protocol and Protective Order.  Cuthbertson Decl., ¶ 15.  Plaintiffs had drafted their response to Google's most recent motion to dismiss and request for judicial notice, but put those to the side shortly before the filing deadlines to commence the early resolution process described above.  *Id*., ¶ 16; *see also* Section III.A. above.

Between September 2021 and January 2022, counsel worked closely with their consulting expert and Google's outside counsel to find an efficient path forward that would provide Plaintiffs with the answers and evidence they needed, while simultaneously providing Google with necessary assurances concerning the scope and confidentiality of a process that would not take place within the confines of formal discovery.  Cuthbertson Decl., ¶ 6  In the end, the Parties' diligence and hard work paid off, and Plaintiffs concluded that the proper groundwork had been laid for mediation and possible resolution.  Cuthbertson Decl., ¶ 9  Taken together, these efforts demonstrate that the Settlement is the result of well-informed and vigorous advocacy on behalf of the Settlement Class.

### B.     The Settlement Was Negotiated at Arm's Length.

The Settlement was reached after serious, informed, arm's length negotiations.  *See* Section III.C. above.  The involvement of a highly experienced mediator such as Judge Ambler supports a finding that the Settlement is not the product of collusion.  *See Camilo v. Ozuna*, 2020 WL 1557428, at *8 (N.D. Cal. Apr. 1, 2020) ("While the participation of a neutral mediator is not

1  . . . dispositive . . . , it nonetheless is 'a factor weighing in favor of a finding of non-

2  collusiveness.'") (quoting *Bluetooth*, 654 F.3d at 948).  Separately, the Settlement itself bears

3  none of the traditional signs of collusion.  *See Bluetooth*, 654 F.3d at 946-48.  This is true even

4  under the heightened standard or review required here.  *See Roes, 1-2*, 944 F.3d at 1048-50.

5  As a result of the early resolution process described above, Plaintiffs and their consulting

6  expert possessed sufficient relevant factual and technical information before deciding whether to

7  engage in settlement negotiations that informed their decision-making during the mediation itself.

8  Based on this knowledge and their experience litigating and settling privacy class actions,

9  Counsel believe that the Settlement is fair, reasonable, and adequate.  *See Beltran v. Olam Spices*

10  *& Vegetables Inc.*, 2021 WL 2284465, at *14 (E.D. Cal. June 4, 2021) (views of counsel

11  experienced in litigation's subject matter weigh in favor of approval), *report and recommendation*

12  *adopted by* 2021 WL 4318141 (E.D. Cal. Sept. 23, 2021).

13  **C.     The Settlement Provides Meaningful Relief to the Settlement Class.**

14  The injunctive relief provided to the Settlement Class under this Settlement is more than

15  "adequate" considering (i) the costs, risks, and delay of trial and appeal; and (ii) the terms of any

16  proposed award of attorney's fees.  *See* Fed. R. Civ. P. 23(e)(2)(C); Procedural Guidance (1)(e).[3]

17  These factors support preliminary approval.

18  **1.     The Costs, Risks, and Delay of Trial And Appeal**

19  In reaching the Settlement, Plaintiffs achieved their principal goal of effectuating

20  meaningful remedy to the design error in Google's EN System, by ensuring that: (1) Google's EN

21  System would not log or collect users' confidential medical information and personally

22  identifying information and (2) Google would represent and warrant (as they have now) that: (i)

23  Google implemented and completed a process designed to review its system for this information

24  and eliminate EN System data it may find within its databases and (ii) Google conducted an

25  investigation and identified no evidence of abuse or misuse by anyone of EN System data that

26

27  [3] Because the Settlement provides only injunctive relief pursuant to Rule 23(b)(2), there is no
   claims process or distribution plan.  *See* Fed. R. Civ. P. 23(e)(2)(C)(ii).  Moreover, Plaintiffs have

28  not entered into any agreements "in connection with the proposal" under Rule 23(e)(3).  *See* Fed.
   R. Civ. P. 23(e)(2)(C)(iv).

PLAINTIFFS' BRIEF IN SUPPORT OF
PRELIMINARY SETTLEMENT APPROVAL
CASE NO.: 5:21-CV-03080-NC

1   was logged to device system logs and that no Google employees or unauthorized persons sought

2   to or attempted to link EN System data with any personally identifying information of any user

3   for use by Google.  In short, through the early resolution process, Plaintiffs determined that

4   Google had taken the necessary actions to remedy the alleged violations, and to make sure no

5   further violations would occur.

6           In contrast to the significant, immediate benefits conferred by the Settlement, continued

7   litigation (including trial and near-certain appeal) would have carried significant costs, risks, and

8   delay with little additional payoff.  Absent the Settlement, the Parties would have litigated

9   Google's motion to dismiss to decision and possible appeal of the same.  At the same time, the

10  Parties had a difficult discovery path before them, which entailed significant disagreements on the

11  protections that should be afforded to confidential information (*see* Dkt. 45 (joint letter brief

12  concerning the scope of the protective order)) and disagreements concerning the scope of

13  discovery.  *See* Dkt. 27 (Joint 26(f) Statement) at 7-9 (showing the wide gulf between the Parties'

14  respective views on the scope of discovery).  Plaintiffs anticipate that Google would not only

15  oppose Plaintiffs' discovery, but that it would continue to aggressively challenge Plaintiffs'

16  claims by opposing class certification and moving for summary judgment. *See id.* at 6 ("Google

17  intends to file a motion to dismiss the amended complaint. If the case survives, Google will file a

18  motion for summary judgment. Google will oppose Plaintiffs' motion for class certification.").

19  Google would likely also file *Daubert* motion to exclude any of Plaintiffs' experts, and taken the

20  case to trial, assuming Plaintiffs' survived summary judgment.

21          Moreover, the Court-ordered injunctive relief provided by the Settlement is substantially

22  equivalent to all of the injunctive relief that Plaintiffs could have hoped to achieved had they

23  prevailed at trial.  There would be little improvement, if any, in the nature of the injunctive relief

24  obtained by engaging in the substantial risks attendant with further litigation, such as risking the

25  ability to have the force of a court order to ensure compliance.

26          Considering the costs, risks, and delay associated with continued litigation, the robust

27  injunctive relief secured through this Settlement represents an excellent result for the Settlement

28  Class.

**2.      Counsel Will Seek Reasonable Attorneys' Fees and Expenses.**

After the Parties reached agreement in principle with respect to the substantive terms of the Settlement, including: (i) the proposed injunctive relief; (ii) the recognition of remedial measures; and (ii) Google's representations and warranties, now set forth in the Settlement Agreement and described above, the Parties agreed that Class Counsel may move the Court for Google to pay an award of reasonable attorneys' fees and expenses.  Cuthbertson Decl., ¶ 17. Although Google has agreed to pay the amount awarded by the Court, the Parties also agreed that Google may contest the *amount* of Class Counsel's request for reasonable attorneys' fees and expenses, and that the Parties will accept, and not appeal, any Court order on attorneys' fees and expenses.  Cuthbertson Decl., Ex. 1 (Settlement Agreement), ¶ 9.1

Because this Settlement provides injunctive relief only under Rule 23(b)(2), any award of attorneys' fees and expenses will not come out of a common fund.  Cuthbertson Decl., ¶ 17. Class Counsel will apply for an award of attorneys' fees and reimbursement of expenses in a total amount not to exceed $2 million.  As of the date of filing this motion for preliminary approval, and based upon their preliminary review, Class Counsel's accrued lodestar is approximately $899,298 based on 1,311.30 of total hours for all relevant timekeepers, and Class Counsel's incurred expenses are approximately $55,349.38 (the vast majority of which comprised consulting expert and mediation costs).  Cuthbertson Decl., ¶¶ 18-19.  Therefore, Class Counsel's fee application will likely seek a positive multiplier on its lodestar, however, Class Counsel's fee application will not seek an award of fees that exceeds a 2.0 multiplier on its lodestar.  Cuthbertson Decl., ¶ 20.

**D.      The Settlement Treats Class Members Equitably.**

The Settlement benefits all Settlement Class members equally by requiring Google to change its practices universally and permanently, without discrimination among users.  Moreover, the disclosures Google will provide on its Exposure Notifications webpage (https://www.google.com/covid19/exposurenotifications/) will benefit all Settlement Class members, and indeed all members of the public, equally as well.  This factor supports preliminary approval.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### E.    The Settlement Satisfies the District's Procedural Guidance.

The discussion in other sections of this brief provides relevant information regarding (and is equally applicable to) Procedural Guidance 1(e) (*see* Section VI.C.1); Procedural Guidance 6 (*see* Section VI.C.2); and Procedural Guidance 9 (*see* Section VIII). Because no litigation class has been certified and the Settlement provides injunctive relief pursuant to a mandatory Rule 23(b)(2) class, provisions 1(b), 1(d), 1(f), 1(g), 1(h), 4, 8, and 11 of the Procedural Guidance do not apply.  In addition, provision 1(a) does not apply because the Settlement Class and the class proposed in the operative complaint are identical.[4]

The remaining provisions are addressed below.

#### 1.    The Releases Mirror the Allegations in the Amended Complaint (Procedural Guidance 1(c))

In exchange for the meaningful business practice changes, critical future commitments, and legally-binding representations and warranties from Google described above (*see* Section IV.), the Lawsuit will be dismissed with prejudice as to Google upon final approval of the Settlement. Settlement Class Members will thereby release all claims for injunctive and non-monetary equitable relief which have been or could have been asserted against Google under the identical factual predicate in the Lawsuit.  No Settlement Class Member will release any claims for monetary damages. *See* Cuthbertson Decl. ¶ 13.  In other words, the release parallels the contours of the class definition and injunctive relief provisions.

Further, the Settlement Agreement releases only claims concerning EN System data, rather than a broader universe of claims directed to Google's logging practices in general, as to non-EN System data.  *See id.*; *see also id.*, Ex. 1 (Settlement Agreement), ¶ 1.12 ("'Settled Claims' includes causes of action regarding the handling of EN System data on system logs."). As Plaintiffs' allegations make clear, they filed suit to require Google "to remediate the security flaw in its implementation and maintenance *of the GAEN system*."  Dkt. 25 (Am. Compl.) at 2, para. 3 (emphasis added); *see also* Dkt. 1 (Compl.) at 2, para. 2 ("to remediate the security flaw in its implementation *of the GAEN system*") (emphasis added).  Though Plaintiffs anticipated that

---

[4] The complaints also contained a California SubClass, but that SubClass is entirely subsumed by the broader Settlement Class agreed to by the Parties.

1    non-EN System data may be relevant in proving that EN System data could be and had been

2    made personally identifiable, *see* Am. Compl. ¶¶ 69-71, Plaintiffs did not complain of, and on the

3    factual predicates pleaded in their complaints, could not have complained of, Google's logging

4    practices with respect to non-EN System data in general.

5    Plaintiffs believe that implementing the important injunctive relief provided for in the

6    Settlement Agreement is preferable to holding out for the possibility of uncertain and likely

7    comparatively modest money awards.  As described above, Plaintiffs' claims are relatively

8    untested, and must survive Google's pending motion to dismiss under Federal Rules of Civil

9    Procedure 12(b)(1) and 12(b)(6), and also face discovery and class certification challenges and

10   significant hurdles at summary judgment and trial.  These hurdles include arguments that

11   damages are too ephemeral or too individualized to warrant certification, and that a jury would

12   not find Google's conduct to be an egregious violation of societal norms, resulting in little or no

13   class-wide payments.  Google will also maintain that Plaintiffs have not met the requirements of

14   the California Confidentiality of Medical Information Act, which is therefore inapplicable to the

15   alleged underlying conduct.  Furthermore, assuming Plaintiffs overcame these obstacles, any

16   class-wide damages or restitution award outside of California may be relatively modest under

17   existing law for most Settlement Class Members.  And if Plaintiffs prevail at trial, any monetary

18   award—no matter the size—would be delayed during the inevitable appeals to any favorable

19   rulings, dragging out resolution for years when the right balance between public health and

20   privacy needs to be struck *now*.

21   Instead, Plaintiffs have secured valuable injunctive relief alongside legally-binding

22   representations and warranties through this settlement.  This is far more valuable to Settlement

23   Class members than small individual damages awards (which grow even smaller when risk-

24   adjusted) and more than justifies the differential between the claims to be released (which are

25   non-monetary) and the monetary claims included in Plaintiffs' complaints.

26          **2.      Settlement Administration Selection Process (Procedural Guidance 2)**

27   To select a settlement administrator, the Parties solicited bids from four well-known and

28   experienced administrators.  Cuthbertson Decl. ¶ 23.  Specifically, the Parties required that any

PLAINTIFFS' BRIEF IN SUPPORT OF
PRELIMINARY SETTLEMENT APPROVAL
CASE NO.: 5:21-CV-03080-NC

1    proposal employ contemporary methods of notice with a robust digital media campaign to ensure

2    the broadest and most effective reach possible.  *Id.*  After considering the bids, the Parties

3    selected KCC Class Action Services, LLC ("KCC"), based on its vast experience in similar class

4    actions and a notice plan proposal that includes innovative, thoughtful, and technologically

5    sophisticated means of notice to Settlement Class Members.  *Id.* ¶ 24.  Class Counsel have

6    previously worked with KCC on four different matters in the past two years.  *Id.* ¶ 25.

7        The total cost of the proposed notice plan is approximately $125,000.  *See* Declaration of

8    Carla A. Peak ("Peak Decl."), ¶ 17. These costs are reasonably necessary to establish a settlement

9    website and to conduct an online advertising campaign that informs potential class members

10   about the Settlement and directs them to the Settlement Website, as well as to maintain a toll-free

11   informational number.  *Id.*, ¶¶ 14-16 (*see* Section VI.C.3.).  Pursuant to the terms of the

12   Settlement Agreement, Google shall have the sole responsibility to pay for and fund all costs

13   associated with the notice program described below, including all of KCC's fees and expenses.

14   *See* Cuthbertson Decl., Ex. 1 (Settlement Agreement), ¶ 6.2.

15              **3.        The Proposed Notice Plan (Procedural Guidance 3 & 5).**

16       Although class notice is not mandatory for a settlement like this one that seeks only

17   injunctive, non-monetary relief, here the Settlement provides for reasonable notice to the

18   Settlement Class.  *See* Fed. R. Civ. P. 23(c)(2); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362

19   (2011) ("The Rule provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does

20   not even oblige the District Court to afford them notice.").  For Rule 23(b)(2) classes, the

21   Advisory Committee on the Federal Rules directs courts to exercise their authority to direct notice

22   with care because the characteristics of (b)(2) classes reduce the need for notice. *See* 2003

23   Advisory Comm. Notes on Fed. R. Civ. P. 23.  Thus, "the discretion and flexibility established by

24   subdivision (c)(2)(A) extend[s] to the method of giving notice," including informal methods such

25   as "[a] simple posting in a place visited by many class members, directing attention to a source of

26   more detailed information . . . ."  *Id.*

27       Here, the Parties have agreed to provide notice to the Settlement Class in accordance with

28   the notice program.  *See* Peak Decl., ¶¶ 10-17. Under the terms of the Proposed Order, 10

1   business days after the Court's preliminary approval order, KCC will publish notice to Settlement

2   Class Members on a single settlement website, and links to the website will be published online

3   using targeted advertisements on various websites likely to be visited and used by Settlement

4   Class Members. *Id.*, ¶¶ 10-13.

5       The contents of notice were formulated in plain, easy-to-understand language to alert

6   Settlement Class Members of the pendency of the Settlement and the opportunity to object and be

7   heard.  *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2019 WL 387322, at *5 (N.D.

8   Cal. Jan. 30, 2019) (notice contents should contain "'plain, easily understood language' and

9   'generally describe the terms of the settlement in sufficient detail to alert those with adverse

10  viewpoints to investigate and to come forward and be heard.'") (quoting Fed. R. Civ. P. 23(c)(2);

11  *Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). Consistent with this

12  District's Procedural Guidance, the notice informs Settlement Class Members of (1) Class

13  Counsel's contact information, and a toll-free number to ask questions about the Settlement; (2)

14  the address of the Settlement Website maintained by the Settlement Administrator that links to

15  important case documents, including the preliminary approval papers, and instructions on how to

16  access the case docket via PACER or in person; (3) the pendency of the litigation and of the

17  Settlement, including the terms thereof; (4) the Class Representatives' applications for service

18  awards; (5) the procedures for filing an objection to the Settlement pursuant to the Guidance; (6)

19  important dates in the settlement approval process, including the date of the Fairness Hearing; and

20  (7) Plaintiffs' forthcoming Attorneys' Fees Motion.  *See* Peak Decl. Ex. 1 (proposed form of

21  notice on the settlement website).

22      The proposed notice plan and form of notice is therefore fair and appropriate.

23          **4.    Service Awards (Procedural Guidance 7)**

24      Pursuant to the Settlement, Class Counsel intends to seek, and Google agrees to pay

25  service awards of $2,500 for each of the two class representatives.  Each Plaintiff devoted

26  extensive resources and energy to this Lawsuit.  First, Plaintiffs provided information to Class

27  Counsel that informed the class action complaints and, thereafter, regularly communicated with

28  Class Counsel about strategy and major case developments throughout the litigation.  Cuthbertson

1   Decl., ¶ 26.  Second, Plaintiffs showed willingness and engagement throughout the early

2   resolution process, receiving appropriate updates about the general status of that process, and how

3   and why it provided sufficient information to warrant mediation.  *Id.*, ¶ 27.  Third, each Plaintiff

4   provided his mobile device to Class Counsel, so that those devices could be completely

5   forensically imaged and safely preserved for discovery purposes.  *Id.*, ¶ 28.  Finally, each Plaintiff

6   reviewed and approved the Settlement after consulting with Class Counsel.  *Id.*, ¶ 29.  In light of

7   this work, these awards are eminently reasonable and supported by law.  *See Rodriguez v. W.*

8   *Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

9              **5.      CAFA Notice (Procedural Guidance 10)**

10              Under the Settlement, Google will serve notice of the Settlement Agreement that meets

11   the requirements of 28 U.S.C. § 1715, on the appropriate federal and state officials no later than

12   ten days following the filing of this Settlement Agreement with the Court.

13              **6.      Electronic Versions (Procedural Guidance 12)**

14              Counsel will provide Word copies of the proposed preliminary approval order per

15   Procedural Guidance 12.

16   **VII.    THE SETTLEMENT CLASS WARRANT CERTIFICATION.**

17              At this stage, the Court must also determine that it is likely to certify the Settlement Class

18   for purposes of judgment on the proposal.  Fed. R. Civ. P. 23(e)(1)(B)(ii).  Each of the

19   requirements of Rules 23(a) and 23(b)(2) is satisfied here.

20              **1.      Rule 23(a) is Satisfied**

21              <u>Numerosity</u>.  The Settlement readily satisfies the numerosity requirement, as contact

22   tracing apps have been downloaded millions of times in the United States.  *See* Am. Compl. ¶ 29;

23   *The Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*, 2016 WL 314400, at *6 (N.D. Cal. Jan.

24   25, 2016) (noting this requirement is "relaxed" where the class seeks injunctive relief only).

25              <u>Commonality</u>.  The claims of the Settlement Class are sufficiently common as they

26   "depend upon a common contention . . . of such a nature that it is capable of classwide

27   resolution."  *Wal-Mart Stores*, 564 U.S. at 350; Fed. R. Civ. P. 23(a)(2).  Common questions

28   underlie all Settlement Class Members' claims including, among other things, whether Google

1    generated EN System data that could have allegedly allowed an inference of COVID status,

2    whether EN System data and other personally identifiable information was logged to device

3    system logs, whether that information is subject to and protected by the CMIA, and whether

4    Google's conduct violated reasonable expectations of privacy and was highly offensive to a

5    reasonable person. *See In re Vizio*, *Inc.*, *Consumer Privacy Litig.*, No. 8:16-ml-02693 (C.D. Cal.

6    Jan. 4, 2019), Dkt. 297 at 8 (commonality established where defendant's "alleged data collection

7    and disclosure practices were uniform" across all devices); *In re Volkswagen "Clean Diesel"*

8    *Mktg.*, *Sales Practices & Prods. Liab. Litig.*, 2017 WL 672727, at *13 (N.D. Cal. Feb. 16, 2017)

9    (finding commonality satisfied where the class representative claims "arise from Volkswagen's

10   common course of conduct").

11            Typicality.  The class representatives' claims are "typical of the claims . . . of the class."

12   Fed. R. Civ. P. 23(a)(3).  Typicality does not require total identity between representative

13   plaintiffs and the class.  *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001).  Rather, typicality

14   is satisfied here, where Plaintiffs' claims stem "from the same event, practice, or course of

15   conduct that forms the basis of the class claims, and . . . upon the same legal theory . . . ."

16   *Jordan v. Los Angeles Cty.*, 669 F.2d 1311, 1321 (9th Cir. 1982).  Plaintiffs allege a common

17   course of conduct whereby Google logged and/or collected from the Class Representatives and

18   other Settlement Class Members EN System data and personally identifying information,

19   including confidential medical information.  *See In re Facebook Biometric Info. Privacy Litig.*,

20   326 F.R.D. 535, 535 (N.D. Cal. 2018) (typicality satisfied where class representatives used

21   Facebook like all others).

22            Adequacy of Representation.  Plaintiffs "will fairly and adequately protect the interests of

23   the class."  Fed. R. Civ. P. 23(a)(4).  Plaintiffs have no interests in conflict with those of the

24   Settlement Class.  Moreover, Plaintiffs' commitment to the case demonstrates their adequacy as

25   described above.

26            Separately, Rule 23(g) requires the Court to appoint class counsel to represent a settlement

27   class.  Considering Counsel's work in this action, their collective familiarity and experience in

28   handling similar actions, and the resources they have committed to representing the Settlement

1  Class, they should be appointed Class Counsel for the Settlement Class under Rule 23(g)(3), and

2  confirmed under Rule 23(g)(1).

3  ## 2. The Requirements of Rule 23(b)(2) are Satisfied

4  The proposed Settlement Class satisfies Rule 23(b)(2), which permits a class treatment

5  where defendants "ha[ve] acted or refused to act on grounds that apply generally to the class, so

6  that final injunctive relief . . . is appropriate respecting the class as a whole."  Fed. R. Civ. P.

7  23(b)(2).  Here, Plaintiffs allege Google has engaged in a uniform collection of users' private

8  data.  *See Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010) (Rule 23(b)(2) satisfied where

9  plaintiffs "complain of a pattern or practice that is generally applicable to the class as a whole.").

10  This Court has certified analogous Rule 23(b)(2) class settlement in privacy cases that similarly

11  sought to enjoin a defendant's common, privacy-invading conduct.  *See*, *e.g.*, *Matera v. Google

12  Inc.*, No. 5:15-cv-04062-LHK (N.D. Cal. Aug. 31, 2017), Dkt. 89 at 2-3 (approving Rule 23(b)(2)

13  settlement requiring that Google "cease all processing of email content" from class members that

14  is used for advertising purposes); *Campbell v. Facebook*, No. 4:13-05996-PJH-SK (N.D. Cal.

15  Apr. 26, 2017), Dkt. 235 at 2 (granting preliminary approval where "[d]efendant is alleged to

16  have acted or refused to act on grounds that apply generally to the Settlement Class");

17  *Campbell v. Facebook*, 315 F.R.D. 250, 269 (N.D. Cal. 2016) (certifying a 23(b)(2) class where

18  defendant "utilized a uniform system architecture and source code").

19  Accordingly, the Court should allow the Rule 23(b)(2) Settlement Class to seek immediate

20  prospective injunctive relief.

21  ## VIII.   PROPOSED SCHEDULE FOR NOTICE AND FINAL APPROVAL

22  The Parties have submitted a proposed order regarding preliminary approval concurrently

23  with this Motion, pursuant to Local Civil Rule 7.2(c), setting forth the proposed schedule of

24  events from here through final approval.  Specifically, the Parties propose the following schedule:

25

| Date | Event |
|------|-------|
| No later than ten (10) business days following the entry of this Order | Notice shall be posted on the Settlement Website, along with all relevant Court orders in the Lawsuit. |

26

27

28

| Date | Event |
|------|-------|
| No later than 65 calendar days before the Final Approval Hearing | Deadline for Plaintiffs to file Final Approval Motion and Attorneys' Fees Motion |
| No later than 30 calendar days before the Final Approval Hearing | Objection Deadline |
| No later than 15 calendar days before the Final Approval Hearing | Deadline to respond to Objections |
| ___ ___, ___, at ___. | **Final Approval Hearing** (at least 100 days after the date the Preliminary Approval Motion is filed, *see* 28 U.S.C. § 1715(d)) |

## IX.   CONCLUSION

Plaintiffs respectfully request the Court (1) find it will likely approve the Settlement; (2) find it will likely certify the Settlement Class; (3) appoint Plaintiffs as Class Representatives for the Settlement Class for purposes of disseminating notice; (4) appoint Plaintiffs' Counsel as Class Counsel for the Settlement Class; (5) direct notice to the Settlement Class; (6) authorize retention of KCC as settlement administrator; and (7) set a final approval hearing.

Dated: May 6, 2022                    */s/ Douglas Cuthbertson*

Douglas Cuthbertson (*pro hac vice*)
dcuthbertson@lchb.com
Nicholas Diamand (*pro hac vice*)
ndiamand@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Ian R. Bensberg (*pro hac vice*)
ibensberg@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008