1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JONATHAN DIAZ and LEWIS
BORNMANN, on behalf of themselves
and all others similarly situated,

                Plaintiffs,

v.

GOOGLE LLC,

                Defendant.

Case No. 5:21-cv-03080-NC

**DECLARATION OF CARLA A. PEAK IN SUPPORT OF SETTLEMENT NOTICE PLAN**

I, Carla A. Peak, declare as follows:

1.      My name is Carla A. Peak. I have personal knowledge of the matters set forth herein, and if called as a witness I could and would testify competently to them.

2.      I am a nationally recognized expert in the field of legal notice and I have served as an expert in dozens of federal and state cases involving class action notice plans.

3.      I am the Vice President of Legal Notification Services for KCC Class Action Services, LLC ("KCC"), a firm that specializes in comprehensive class action services, including legal notification, email and postal mailing campaign implementation, website design, call center support, class member data management, claims processing, check and voucher disbursements, tax reporting, settlement fund escrow and reporting, and other related services critical to the effective administration of class action settlements. With more than 30 years of industry experience, KCC has developed efficient, secure and cost-effective methods to properly handle the voluminous data and mailings associated with the noticing, claims processing and disbursement requirements of these matters to ensure the orderly and fair treatment of class members and all parties in interest. KCC has been retained to administer more than 6,000 class actions and distributed settlement payments totaling well over $20 billion in assets.

4.     This Declaration describes my experience as well as KCC's experience. It also describes the proposed notice plan (the "Notice Plan" or "Notice Program") designed for this proposed class action settlement, including why I believe it will be effective and will constitute appropriate notice under the circumstances of this Settlement, pursuant to Fed. R. Civ. P. 23(c)(2)(A) ("Rule 23").  I also believe that the proposed notice plan will comply with the notice requirements of this District's Procedural Guidance for Class Action Settlements.

## EXPERIENCE

5.     KCC has administered class action settlements involving such defendants as HP-Compaq, Toyota, LensCrafters, United Parcel Service, Ford, Mitsubishi, Nissan, Whirlpool, ATI Video Cards, and Twentieth Century Fox. Further, KCC has been retained as the administrator in a variety of consumer matters. Some consumers case examples which KCC has been involved with include: *Barba v. Shire U.S., Inc*., No. 1:13-cv-21158 (S.D. Fla.); *Beck-Ellman v. Kaz USA Inc*., No. 10-cv-2134 (S.D. Cal.); *Brickman v. Fitbit, Inc*., No. 3:15-cv-02077 (N.D. Cal.); *Cicciarella v. Califia Farms, LLC*, No. 7:19-cv-08785 (S.D.N.Y); *Elkies v. Johnson & Johnson Services, Inc*., No. 2:17-cv-07320 (C.D. Cal.); *Friend v. FGF Brands (USA), Inc*., No. 1:18-cv-07644 (N.D. Ill.); *Holt v. Foodstate, Inc*., No. 1:17-cv-00637 (D. N.H.); *In re Morning Song Bird Food Litig*., No. 3:12-cv-01592 (S.D. Cal.); *In re Nexus 6P Products Liab. Litig*., No 5:17-cv-02185 (N.D. Cal.); *In Re: Rust-Oleum Restore Marketing, Sales Practices and Products Liab. Litig*., No. 1:15-cv-01364 (N.D. Ill.); *In re Trader Joe's Tuna Litig*., No. 2:16-cv-01371 (C.D. Cal.); *Lerma v. Schiff Nutrition International, Inc*., No. 3:11-cv-01056 (S.D. Cal.); *Morrisey v. Tula Life, Inc*., No. 2021L000646 (Cir. Ct. Ill.); *Poertner v. The Gillette Co. and The Procter & Gamble Co*., No. 6:12-cv-00803 (M.D. Fla.); *Rael v. The Children's Place, Inc*., No. 3:16-cv-00370 (S.D. Cal.); *Rikos v. The Procter & Gamble Co*. (Align Probiotics), No. 11-cv-00226 (S.D. Ohio); *Roberts v. Electrolux Home Products, Inc*., No. 8:12-cv-01644 (C.D. Cal.); *Russell v. Kohl's Department Stores, Inc.*, No 5:15-cv-01143 (C.D. Cal.); *Schneider v. Chipotle Mexican Grill, Inc*., No. 3:16-cv-02200 (N.D. Cal.); *Shames v. The Hertz Corporation*, No. 07-cv-2174 (S.D. Cal.); and *Suchanek v. Sturm Foods, Inc*., No. 3:11-cv-00565 (S.D. Ill.).

6.      I have personally been involved with creating and implementing notice programs in many large and significant class action settlements, including *In re Anthem, Inc. Data Breach Litig.*, a national data breach class action involving approximately 79 million class members who had personally identifiable information exfiltrated from Anthem's databases; *In re: Skelaxin (Metaxalone) Antitrust Litig.*, No. 1:12-md-02343 (E.D. Tenn.), a multi-state antitrust settlement involving both third-party payors and consumers that purchased or paid for brand and generic version of the prescription drug metaxalone; *Chambers v. Whirlpool Corp.*, No. 8:11-cv-01733 (C.D. Cal.), a national product defect case involving class members who purchased allegedly defective dishwashers; *In re Trans Union Corp. Privacy Litig.*, a $75 million data breach class action settlement requiring one of the largest discretionary class action notice campaigns to reach virtually every adult in the United States; and *In re Residential Schs. Litig.*, No. 00-CV-192059 (Ont. S.C.J.), the largest and most complex class action in Canadian history incorporating a groundbreaking notice program to disparate, remote aboriginal persons qualified to receive benefits in the multi-billion dollar settlement.

7.      In forming my opinions, I draw from my in-depth class action settlement and notice experience. I have worked in the class action notification field for nearly 20 years. During that time, I have been involved in all aspects in the design and implementation of class action notice planning, as well as the drafting of plain language notice documents that satisfy the requirements of Rule 23 and adhere to the guidelines set forth in the Manual for Complex Litigation, Fourth and by the Federal Judicial Center ("FJC").

8.      I have been involved with hundreds of cases, including the dissemination of notice around the globe in more than 35 languages. I have received numerous judicial comments citing cases I have worked on, as well as written articles and given presentations where I have discussed the adequacy and design of legal notice efforts.

## NOTICE PROGRAM DETAILS

### Class Definition

9.      The proposed Settlement Class is defined as:

All natural persons in the United States who downloaded or

activated a contact tracing app incorporating the Google-Apple Exposure Notification System[1] on their mobile device ("Class").

Excluded from the Class are Google, its current employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; the undersigned counsel for Plaintiffs and their employees; and the Judge and court staff to whom this case is assigned.

**Consumer Notice Campaign**

10.     KCC has strategically designed a robust digital media campaign to provide notice to Settlement Class Members. The digital notice will drive Settlement Class Members to the settlement website, which will describe the improvements Google has made and their benefits, and then describe the litigation, the settlement, and the settlement approval process, including all relevant dates and deadlines.

11.     More specifically, KCC will produce and place digital media notices on a variety of websites and on social media and entertainment networks owned by Meta Platforms Inc. ("Meta"). Notice will be geographically targeted to users in the United States, Puerto Rico, and Guam and will be purchased programmatically across various websites and mobile apps and directly with Facebook, Instagram, and Meta Audience Network. The campaign will be layered to help ensure delivery to the most appropriate users. For example, targeting layers will include mobile devices (specifically to devices using Android and Apple (iOS) mobile operating systems), mobile sites, and mobile apps. An emphasis will be applied to deliver impressions to states/geographies whose public health authorities have implemented Contact-Tracing Apps that use the EN System.  See Dkt. 25 (Am. Compl.), ¶ 18 (listing the relevant states and territories).

12.     Approximately 100,000,000 internet impressions will be purchased programmatically and distributed over a period of forty-five (45) days. Impressions will appear on both desktop and mobile devices, including smartphones and tablets, in display and native ad formats, and will include an embedded link to the case website.

13.     The digital media campaign will be routinely monitored by KCC's digital specialists to analyze key campaign performance indicators (KPIs), such as click-through rates

---

[1] Google-Apple Exposure Notification System means the coronavirus disease 2019 (COVID-19) contact tracing system developed by Google and Apple for mobile devices in 2020.

1   (CTRs) and costs per action (CPAs). This knowledge will be leveraged to allocate placements to

2   sites that have demonstrated successful KPIs throughout the duration of the campaign. Ad fraud

3   will be combatted through demand management platforms and online ad verification and security

4   providers. The media campaign will be routinely monitored by KCC's digital specialists to

5   analyze key campaign performance indicators (KPIs), such as click-through rates (CTRs) and

6   costs per action (CPAs). This knowledge will be leveraged to allocate placements to sites that

7   have demonstrated successful KPIs throughout the duration of the campaign.

8   **Response Mechanisms**

9         14.     KCC will establish and maintain a case-specific website to allow Settlement Class

10   Members to obtain additional information and documents about the Settlement. The website will

11   have a user-friendly design and highlight Google's contact tracing efforts.  The notice will first

12   describe the improvements and their benefits, and then describe the litigation and the settlement.

13   Attached as **Exhibit 1** is a draft of the proposed website notice.

14         15.     The website will also include at least the following information: (i) improvements

15   made by Google to its EN System and information learned by Plaintiffs about Google's

16   management of EN System data that led to Plaintiffs' agreement to dismiss their claims and

17   settle; (ii) stand-alone descriptions of the injunctive relief and remedial measures; and (iii) a

18   summary of the case and the settlement.  The Settlement Website will also include (i) a "Contact

19   Us" page with settlement administrator information; (iii) the settlement agreement, motions for

20   approval and for attorneys' fees and any other important documents in the case; and (ii) important

21   cases dates and deadlines; and (iv) answers to frequently asked questions (FAQs). The website

22   address will be accessible through an embedded link in the digital notices.

23         16.     KCC will establish and host a case-specific toll-free number to allow Settlement

24   Class Members to learn more about the Settlement in the form of frequently asked questions and

25   answers.

26

27

28

1    **Administration**

2         17.    The total cost of the proposed notice plan is approximately $125,000. These costs

3    are reasonably necessary to establish a settlement website and to conduct an online advertising

4    campaign that informs potential class members about the Settlement and directs them to the

5    Settlement Website, as well as to maintain a toll-free informational number.

6                                        **CONCLUSION**

7         18.    In my opinion, the Notice Plan proposed for this case is consistent with other

8    effective settlement notice programs, including those concerning other Rule 23(b)(2) settlements,.

9    which also provided notice to class members, including about the injunctive relief and/or other

10   non-monetary relief agreed thereto.  In other words, I believe the proposed notice program fully

11   comports with Fed. R. Civ. P. 23, and complies with this District's Procedural Guidance for Class

12   Action Settlements.

13        I, Carla A. Peak, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the

14   foregoing is true and correct. Executed this 6th day of May 2022, at Sellersville, Pennsylvania.

15

16

17                                    _____
                                         CARLA A. PEAK
18

19

20

21

22

23

24

25

26

27

28

# Exhibit 1

**<u>NOTICE OF IMPROVEMENTS TO PRIVACY AND SECURITY OF CONTACT
TRACING EXPOSURE NOTIFICATION SYSTEM</u>**

**TO: USERS WHO DOWNLOADED OR ACTIVATED A COVID-19 CONTRACT
TRACING APP FOR USE WITH THE GOOGLE-APPLE EXPOSURE NOTIFICATION
SYSTEM**

As the result of a class action settlement ("the Settlement"), Google has agreed to certain privacy improvements to its COVID-19 Exposure Notifications System ("EN System"), which allows users to download or activate a contact tracing app to engage in COVID-19 contract tracing using their mobile devices.  The Settlement defines "EN System" as "Google's Exposure Notifications APIs and/or Google's Template EN Express App."  Google developed this technology with Apple for mobile devices in 2020.  Google helped design the EN System to rapidly assist public health authorities' contact tracing efforts and manage the spread of COVID-19 while upholding key privacy and security principles.  These efforts were born out of a shared sense of responsibility to help governments and the global community fight the pandemic in a privacy-protective way.

The privacy improvements and changes are supported by certain representations and warranties made by Google as part of the Settlement, which are described further below.

The privacy improvements and privacy-related actions are as follows:

- Google will maintain and not revert certain software code changes Google rolled out to EN System users on April 21, May 5, and May 6, 2021, to improve how technical information is saved on the system logs of mobile devices running Google's Android operating system.  System logs are text files stored locally on Android mobile devices containing information about the operation of the device, the operating system, and applications on the device.  The changes provide additional privacy protection for users of Exposure Notifications apps.

- Google has implemented and completed a process designed to search for and eliminate certain data generated by the EN System before the changes described above that Google may find within its databases.

- Google has agreed to edit the "Exposure Notifications and your privacy" section of its webpage describing the EN System, which is linked to ==here==, in a way that explains the heightened security and privacy protections described above.

These improvements are in addition to the privacy protections Google built into the EN System from the beginning:

- Users decide whether they want to use Exposure Notifications and can turn it off at any time.

- Users also decide whether to share their COVID-19 diagnosis with their local public health authority, and are not identified to other users.

- The devices of users opting into the EN System regularly exchange Bluetooth beacons composed of strings of random numbers that change every 10-15 minutes to prevent tracking.

On the basis of Google's improvements to the EN System's existing privacy protections, and the additional measures described below, Plaintiffs in *Diaz v. Google LLC*, No. 5:21-cv-03080-NC (N.D. Cal.) ("the Lawsuit"), have agreed to dismiss their non-monetary claims. As described further below, Plaintiffs allege that the EN System inappropriately logged contact tracing app users' confidential medical information and personally identifiable information. Google denies these allegations. The Court has not determined whether the allegations are true.

The Settlement does not require you to do anything, and you are not required to take any action to receive its benefits. This Notice is to explain the Lawsuit, the Settlement, and how you can object to it, if you want.

### The Class

The class of persons affected by the Settlement is defined as follows:

> All natural persons in the United States who downloaded or activated a contact tracing app incorporating the Google-Apple Exposure Notification System on their mobile device. Excluded from the Class are Google, its current employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; the undersigned

counsel for Plaintiffs and their employees; and the judge and court
staff to whom this case is assigned.

The Settlement defines "Google-Apple Exposure Notification System" as "the coronavirus
disease 2019 (COVID-19) contact tracing system developed by Google and Apple for mobile
devices in 2020."

### Summary of the Lawsuit

The Lawsuit resolved by the Settlement is *Diaz v. Google LLC*.  It was filed in April
2021 in the United States District Court for the Northern District of California in San Jose under
the case number 5:21-cv-03080-NC.  You can see the Court's docket for the Lawsuit by going to
the Court's "Public Access to Court Electronic Records" or "PACER" system at
https://ecf.cand.uscourts.gov and searching for the Lawsuit by name or case number, but the
Court will charge you a fee to download any documents from PACER.  The most important
documents are available through this website for free.

Plaintiffs allege that Google's EN System contained a security vulnerability whereby
confidential medical information and other personally identifying information was logged onto
Android mobile device system logs in a manner that violated (1) the common law protection
against intrusion upon seclusion, (2) the right to privacy under Article 1, Section 1, of the
California Constitution, (3) the common law protection against public disclosure of private facts,
and (4) California's Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56 and
following.

The Court has not made a determination of any wrongdoing by Google, which denies the
allegations and Plaintiffs' claims.

### Summary of the Early Resolution Process and of the Settlement

From August 2021 through January 2022, the parties explored early resolution of the
Lawsuit, eventually agreeing upon a process whereby Google provided highly confidential
technical information in various forms to Plaintiffs concerning the core technological issues

relevant to Plaintiffs' allegations.  In February and January 2022, Google and Plaintiffs engaged in mediation, which ultimately resulted in the parties reaching an agreement to settle the Lawsuit.

To operate the EN System in a way that is as protective of users' privacy as possible, Google has consistently made improvements and refinements to the EN System.  In particular, Google made software code changes on April 21, May 5, and May 26, 2021, to improve how technical information is logged to Android system logs.  These changes were intended to provide an additional layer of privacy protection for users of Exposure Notifications apps.  Because Plaintiffs believe these measures have solved the problems they identified in the Lawsuit, they have agreed to dismiss their claims.

Under the Settlement, Google represents and warrants that (1) Google does not place any data in Android mobile device system logs generated by Google's EN System from which a particular user's health status could be inferred, even if another party knew to whom the system log belongs; (2) Google has implemented and completed a process designed to search for and eliminate EN System data (defined in the Settlement as "data alleged by Plaintiffs to have been generated by the EN System prior to the code changes described above that could have allegedly allowed an inference of COVID status") it may find within its databases; (3) Google issued a "Partner Security Advisory" to third parties explaining the changes Google made to the EN System software code; (4) Google has evaluated the likelihood of access to and subsequent misuse of EN System data logged to users' devices and has identified no evidence of abuse or misuse by anyone of EN System data that was logged to device system logs; (5) Google conducted an investigation revealing that no team at Google sought to or attempted to link EN and non-EN System data contained in Android mobile device system logs for any such use by Google and that the investigation revealed no attempts by Google employees or unauthorized persons to connect EN System data with any personally identifying information of any user by Google.

Google agrees to (1) maintain and not revert the software code changes described above; (2) confirm that, after a good-faith, thorough search, it has identified no EN System data on its

internal systems from which any employee could draw any inference about the health status of an EN user; (3) edit the Google webpage on the EN System to explain and describe the heightened security and privacy protections; (4) pay service awards, attorneys' fees, expenses, and costs awarded by the Court.

The parties have agreed to ask the Court to certify the Class, described above, for the purposes of the Settlement under Federal Rule of Civil Procedure 23(b)(2), which adjudicates all claims for injunctive and equitable relief regarding the handling of EN System data on system logs.  The Settlement does not adjudicate claims for damages or other monetary relief.

## The Settlement May Affect Your Rights

If you are a person in the United States who downloaded or activated a contact tracing app incorporating the Google-Apple Exposure Notification System on your mobile device (and are not excluded from the definition of the Class because you're an employee of Google, Class Counsel, or the Court, or for another reason according to the definition), your rights may be affected by the Settlement.  See the section entitled "Release" below for more details.  You do not have to take any action to receive the benefits of the Settlement.

## No Opting Out

Because the Settlement provides "injunctive relief"—that is, the Settlement requires Google to behave in a certain way under an injunction from the Court—and no monetary relief, members of the Class cannot "opt out" of the Settlement.  That means the Settlement will apply to or "bind" the entire Class, if the Court approves it.  Class members can object to the Settlement, though, which is described below.

## Release

If the Settlement is approved, Class members will release Google from and for any and all claims, whether known or unknown, which they have or may have in the future, that were alleged or asserted against Google in the Lawsuit or that could have been alleged or asserted against Google in the Lawsuit.

This only applies to claims for injunctive relief, however, and for other kinds of non-

monetary relief (or "equitable relief"). Class members will not release Google from any claims for damages or other monetary relief. The specific release provision in the Settlement is provided here.

## Service Awards

In addition to their own fees and expenses (which are described below), Class Counsel will also ask the Court for Google to pay a $2,500 "service award" to each of the two named Plaintiffs who filed the Lawsuit. The service awards are meant to compensate the two named Plaintiffs for filing the Lawsuit and obtaining the Settlement for the benefit of all Class members.

## Class Counsel's Request for Fees and Expenses

Class Counsel are lawyers from the firm of Lieff Cabraser Heimann & Bernstein LLP.

Class Counsel will request that the Court award them reasonable attorneys' fees and reimbursement of their costs and expenses, including expert fees, for their service to the Class in litigating this Lawsuit and obtaining the Settlement for the benefit of the Class.

The parties agreed to the non-monetary relief that comprises the core benefit of the Settlement before the parties agreed that Class Counsel may move the Court for Google to pay an award of reasonable attorneys' fees and expenses. Although Google has agreed to pay the amount awarded by the Court, the parties also agreed that Google may contest the *amount* of Class Counsel's request for reasonable attorneys' fees and expenses, and that the parties will accept, and not appeal, any Court order on attorneys' fees and expenses.

Class Counsel will apply for an award of attorneys' fees and reimbursement of expenses in a total amount not to exceed $2 million. As of the date of filing Plaintiffs' motion for preliminary approval of the Settlement, and based upon their preliminary review, Class Counsel's accrued lodestar is approximately $899,298 based on 1,311.3 of total hours for all relevant timekeepers, and Class Counsel's incurred expenses are approximately $55,349.38 (the vast majority of which comprised consulting expert and mediation costs). Therefore, Class Counsel's fee application will likely seek a positive multiplier on Counsel's lodestar. However, Class Counsel's fee application will not seek an award of fees that exceeds a 2.0x multiplier on

Counsel's lodestar.

### Final Approval Hearing, Comments, and Objections

The Settlement will not become final unless and until the Court approves it.  The Court has set a final approval hearing about the Settlement at [time] on [month] [day], 2022, before the Honorable Nathanael Cousins, United States Magistrate Judge, in Courtroom 5, at the Robert F. Peckham Federal Building and United States Courthouse, 280 South 1st Street, San Jose, CA 95113, to determine whether (1) the Settlement is fair, reasonable, and adequate; (2) a judgment and order of final approval should be entered by the Court dismissing the Lawsuit "with prejudice" (that is, for good); (3) Plaintiffs' request for service awards should be approved; and (4) Class Counsel's request for attorneys' fees and expenses should be approved.

NOTE THAT THE FINAL APPROVAL HEARING IS CURRENTLY SET FOR [TIME], [MONTH] [DAY], 2022, BUT THAT DATE MAY CHANGE WITHOUT FURTHER NOTICE TO CLASS MEMBERS.

If you are a Class member (according to the Class definition above), you can ask the Court to deny approval of the Settlement by filing an objection before the deadline for objections, [month] [day], 2022.  You cannot ask the Court to order a different settlement; the Court can only approve or reject this Settlement.  If the Court denies approval of the Settlement at the final approval hearing, none of the agreed-upon business practice changes in the Settlement will be required to be implemented, and the Lawsuit will continue.  If you do not want the Court to approve a Settlement, you must object.

Any objection to the Settlement must be in writing and made only to the Court (not to the lawyers or the parties).  If you file a timely written objection, you may, but are not required to, appear at the final approval hearing, either in person or through your own attorney.  If you appear through your own attorney, you are responsible for hiring and paying that attorney.

All written objections and supporting papers must (a) clearly identify the case name and number (*Diaz v. Google LLC*, No. 5:21-cv-03080-NC); (b) be submitted to the Court either by mailing them to the Clerk, United States District Court for the Northern District of California,

Robert F. Peckham Federal Building and United States Courthouse, 280 South 1st Street, Room 2112, San Jose, CA 95113, or by filing them in person at any location of the United States District Court for the Northern District of California (which you can find at https://www.cand.uscourts.gov/about/locations); and (c) be filed or postmarked on or before [month] [day], 2022.  If you do not submit a timely written objection, or if you do not request participation in the final approval hearing, you will not be able to participate in the final approval hearing.

### Contacting Class Counsel

Class Counsel may be contacted as follows:

> Douglas I. Cuthbertson
> dcuthbertson@lchb.com
> LIEFF CABRASER HEIMANN & BERNSTEIN LLP
> 250 Hudson Street, 8th Floor
> New York, NY 10013
> 212-355-9500

### More Information

**PLEASE DO NOT CONTACT THE DISTRICT COURT OR THE CLERK'S OFFICE WITH QUESTIONS REGARDING THIS NOTICE.**  You may obtain more information by contacting the Settlement Administrator at KCC, or by calling toll-free at 1-xxx-xxx-xxxx.

This Notice is not an expression of any opinion by the Court as to the merits of the Lawsuit or the fairness of the Settlement.  This Notice is only to advise you of the Lawsuit, the Settlement, and your rights.

[FURTHER LINKS]

DATED:  [month] [day], 2022

BY ORDER OF THE DISTRICT COURT,
UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

2412300.8

- 8 -