**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Ian R. Bensberg (*pro hac vice*)
ibensberg@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Nicholas Diamand (*pro hac vice*)
ndiamand@lchb.com
Douglas Cuthbertson (*pro hac vice*)
dcuthbertson@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone:  212.355.9500
Facsimile:  212.355.9592

*Counsel for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| JONATHAN DIAZ and LEWIS BORNMANN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No.: 5:21-cv-03080-NC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS ................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 2

I.      Preliminary Statement .......................................................................... 2

II.     The Settlement Agreement's Provisions on Fees, Expenses, and Service Awards ........... 3

III.    The Requested Attorney's Fees Are Fair, Reasonable, and Appropriate. ..................... 3

        A.     Class Counsel incurred a reasonable lodestar. ....................................... 4

               1.     Class Counsel's hours worked are reasonable. ............................. 4

               2.     Class Counsel's hourly rates are reasonable. ............................. 7

        B.     Class Counsel's requested multiplier and overall fee request are reasonable......... 9

               1.     Class Counsel obtained an excellent result. ............................. 11

               2.     This action raised novel and complex issues, and entailed substantial risk of nonpayment. ........................................ 11

               3.     Class Counsel provided high-quality representation in devising and executing an innovative and creative resolution process, and zealously represented Class members' interests. ...................... 13

               4.     The Ninth Circuit has urged district courts to discourage lodestar-padding and promote efficiency, especially where counsel obtains timely relief for a class in immediate need of it. .......................... 14

IV.     Class Counsel's Litigation Expenses Are Reasonable and Should Be Reimbursed......... 16

V.      The Requested Service Awards Are Reasonable. ............................................ 16

VI.     Conclusion ................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015) ........................................................................ 10

*Blum v. Stenson*,
465 U.S. 886 (1984) ...................................................................................... 4, 7

*Camacho v. Bridgeport Fin., Inc.*,
523 F.3d 973 (9th Cir. 2008) ............................................................................ 9

*Campbell v. Facebook Inc.*,
No. 4:13-cv-05996-PJH, 2017 WL 3581179 (N.D. Cal. Aug. 18, 2017) ................... 8

*Carlin v. DairyAmerica Inc.*,
380 F. Supp. 3d 998 (E.D. Cal. 2019) ................................................................ 17

*Destefano v. Zynga, Inc.*,
No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ................... 9, 15

*Gergetz v. Telenav, Inc.*,
No. 16-cv-04261-BLF, 2018 WL 4691169 (N.D. Cal. Sept. 27, 2018) ................... 10

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ............................................................................ 4

*Harris v. Vector Mktg. Corp.*,
2012 WL 381202 (N.D. Cal. Feb. 6, 2012) ......................................................... 17

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ...................................................... 10

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ........................................................................................ 11

*In re Anthem, Inc. Data Breach Litig.*,
No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) .................... 8

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
No. 3:20-mn-02972, 2021 WL 3568394 (D.S.C. Aug. 12, 2021) ........................... 12

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .......................................................................... 4, 9

*In re Google Referrer Header Privacy Litig.*,
87 F. Supp. 3d 1122 (N.D. Cal. 2015), *vacated on other grounds sub nom. Frank v. Gaos*, 139
S. Ct. 1041 (2019) ........................................................................................... 10

*In re Heritage Bond Litig.*,
No. 02-ml-1475-DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ....................... 13

*In re Intuit Data Litig.*,
No. 15-CV-1778-EJD-SVK, 2019 WL 2166236 (N.D. Cal. May 15, 2019) ................. 8

*In re Lithium Ion Batts. Antitrust Litig.*,
No. 4:13-md-02420-YGR-DMR, 2020 WL 7264559 (N.D. Cal. Dec. 10, 2020) ......... 8

*In re Media Vision Tech. Sec. Litig.*,
913 F. Supp. 1362 (N.D. Cal. 1996) ................................................................... 16

**TABLE OF AUTHORITIES**
(continued)

Page

*In re N.C.A.A. Athletic Grant-in-Aid Cap Antitrust Litig.*,
No. 14-md-02541-CW (NC), 2019 WL 12194763 (N.D. Cal. Dec. 6, 2019) .......................... 15

*In re Plaid Inc. Privacy Litig.*,
No. 4:20-cv-03056 (N.D. Cal. July 20, 2022)................................................................... 7

*In re Pokémon Go Nuisance Litig.*,
No. 3:16-cv-04300-JD (N.D. Cal. June 13, 2019) ........................................................... 8

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
No. 2672 CRB (JSC), 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017)........................................ 8

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
No. 2672 CRB (JSC), 2017 WL 3175924 (N.D. Cal. July 21, 2017)........................................ 8

*In re Wash. Pub. Power Supply Sys. Sec. Litig.* (*WPPSS*),
19 F.3d 1291 (9th Cir. 1994)................................................................................... 12

*In re Wells Fargo & Co. S'holder Deriv. Litig.*,
445 F. Supp. 3d 508 (N.D. Cal. 2020) ......................................................................... 8

*Johnson v. Fujitsu Tech. & Bus. of Am. Inc.*,
No. 16-cv-03698-NC, 2018 WL 2183253 (N.D. Cal. May 11, 2018)................................ 14, 15

*Ketchum v. Moses*,
17 P.3d 735 (Cal. 2001) ..................................................................................... 9, 14

*Kutzman v. Derrel's Mini Storage, Inc.*,
2020 WL 5909151 (E.D. Cal. Oct. 6, 2020) ................................................................ 10

*Laffitte v. Robert Half Int'l Inc.*,
376 P.3d 672 (Cal. 2016) ..................................................................................... 4, 9

*Lealao v. Beneficial Cal., Inc.*
97 Cal. Rptr. 2d 797 (Ct. App. 2000)......................................................................... 3, 4

*Lilly v. Jamba Juice Co.*,
No. 13-CV-02998-JST, 2015 WL 2062858 (N.D. Cal. May 4, 2015) ....................................... 7

*Lourdes Lefevre v. Five Star Quality Care Inc.*,
No. 5:15-cv-01305-VAP-SPx, 2021 WL 2389884 (C.D. Cal. Jan. 7, 2021)........................... 10

*McCown v. City of Fontana*,
565 F.3d 1097 (9th Cir. 2009)................................................................................ 11

*McDonald v. Kiloo A/S*,
No. 3:17-cv-04344 (N.D. Cal. Apr. 21, 2021) ............................................................ 7, 8

*Mills v. Electric Auto-Lite Co.*,
396 U.S. 375 (1970)............................................................................................ 16

*O'Bannon v. N.C.A.A.*,
114 F. Supp. 3d 819 (N.D. Cal. 2015), *report and recommendation adopted in relevant part*,
No. C 09-3329, 2016 WL 1255454 (N.D. Cal. Mar. 31, 2016)................................................ 15

*Pan v. Qualcomm Inc.*,
No. 16-cv-01885-JLS-DHB, 2017 WL 3252212 (S.D. Cal. July 31, 2017) ............................. 10

*Ridgeway v. Wal-Mart Stores Inc.*,
269 F. Supp. 3d 975 (N.D. Cal. 2017) ..................................................................... 9, 14

iii

**TABLE OF AUTHORITIES**
(continued)

Page

*Roberts v. AT&T Mobility LLC*,
   No. 3:15-cv-03418 (N.D. Cal. Aug. 20, 2021) ............................................................. 7

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .................................................................................... 16

*Roes, 1–2 v. SFBSC Mgmt. LLC*,
   944 F.3d 1035 (9th Cir. 2019) .................................................................................. 16

*Ronquillo-Griffin v. TransUnion Rental Screening Sols. Inc.*,
   2019 WL 2058596 (S.D. Cal. May 9, 2019) ............................................................. 17

*Rushing v. The Walt Disney Co.*,
   No. 3:17-cv-04419 (N.D. Cal. Apr. 12, 2021), No. 3:17-cv-04344, Dkt. 408-4 ......... 8

*Rushing v. ViacomCBS Inc.*,
   No. 3:17-cv-04492 (N.D. Cal. Apr. 12, 2021), No. 3:17-cv-04344, Dkt. 408-5 ......... 8

*Shin v. Plantronics, Inc.*,
   No. 18-cv-05626-NC, 2020 WL 510348 (N.D. Cal. Jan. 31, 2020) .......................... 14

*Stanger v. China Elec. Motor, Inc.*,
   812 F.3d 734 (9th Cir. 2016) .................................................................................... 13

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .................................................................................... 16

*Stetson v. Grissom*,
   821 F.3d 1157 (9th Cir. 2016) ............................................................................. 13, 15

*Terry v. Hoovestol Inc.*,
   2019 WL 2061105 (N.D. Cal. May 9, 2019) ............................................................. 17

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ............................................................................................. 12

*Uschold v. NSMG Shared Servs. LLC*,
   2020 WL 3035776 (N.D. Cal. June 5, 2020) ............................................................ 10

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ............................................................................. passim

*Weeks v. Baker & McKenzie*,
   74 Cal. Rptr. 2d 510 (Ct. App. 1998) ......................................................................... 9

**RULES**

Fed. R. Civ. P. 23(h) .................................................................................................... 3

**OTHER AUTHORITIES**

Muhammad Shahroz *et al.*, *COVID-19 digital contact tracing applications and techniques: A review post initial deployments*, 5 Transp. Eng'g 100072 (Sept. 2021), *available at*
   https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8132499 ...................................... 11

iv

1

## NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

2

3      PLEASE TAKE NOTICE that on October 11, 2022, at 11:00 a.m. by Zoom webinar,

4 Plaintiffs will and hereby do move the Court for an order granting Plaintiffs' motion for

5 attorneys' fees, expenses, and service awards.

6      Plaintiffs request that the Court enter an order (1) awarding $1,958,208.00 in attorneys'

7 fees to Class Counsel; (2) awarding Plaintiffs $56,457.44 in expenses, including expert costs; and

8 (3) awarding Plaintiffs $2,500 each in service payments (totaling $5,000). This motion is

9 supported by the attached Memorandum of Points and Authorities, the attached Declaration of

10 Douglas I. Cuthbertson ("Cuthbertson Fee Decl."), all papers and records on file in this matter,

11 and such other matters as the Court may consider.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **MEMORANDUM OF POINTS AND AUTHORITIES**

2

### **I.      Preliminary Statement**

3        Plaintiffs filed their initial complaint in this matter on April 27, 2021 in the middle of the

4    COVID-19 pandemic, less than a year after Google released its system for contact tracing on

5    Android mobile devices, called the "Exposure Notification" or "EN System." *See* Dkt. 25, Am.

6    Compl. ¶ 13. At that time, Google represented that any data generated by the EN System never

7    left a user's Android device and that the identities of users and their COVID-19 status would

8    remain anonymous, and would not be collected by Google. Plaintiffs' forensic investigation

9    revealed the contrary. Plaintiffs filed suit to ensure that current and future EN System users could

10   participate in the EN System safely, without fear of compromising their privacy and health status.

11   Plaintiffs achieved that goal by engaging in negotiations very soon after commencing the action,

12   including a process for an efficient and creative exchange of confidential, technical information,

13   culminating in a binding agreement for complete injunctive relief as memorialized in the

14   proposed settlement.

15       This overwhelmingly positive outcome was not preordained. Plaintiffs filed suit facing

16   significant risks that their novel and untested medical privacy claims would not succeed, and that

17   under the best of circumstances that they would be mired in many months or even years of

18   pleadings challenges and discovery battles without recourse to move quickly and fix the alleged

19   security vulnerabilities. Instead, the Parties short-circuited the risks, burdens, and delays of

20   litigation by fashioning an innovative and creative informal resolution process, conceived of by

21   Class Counsel, that allowed Plaintiffs and their consulting expert access to confidential materials

22   and the ability to make critical forensic determinations grounded in reality. As a result of this

23   diligent advocacy, a Class in need of immediate relief has timely obtained it with minimum

24   demands on judicial resources. Moreover, Class Counsel brought to this action a wealth of skill

25   and experience from litigating other digital privacy cases, while assuming the risk of nonpayment,

26   and advancing all necessary expenses to seek a fee only in the event of a favorable resolution for

27   class members.

28       For obtaining this excellent relief for the Class with speed and efficiency, despite the

1  substantial risks and complexity the case entailed, Class Counsel are entitled to a reasonable fee.

2  Class Counsel requests an award in an amount, consistent with the law of the Ninth Circuit and

3  this District's practice, of $1,958,208.00, representing Class Counsel's reasonably incurred

4  lodestar times a reasonable 2.0 multiplier. Class Counsel are also entitled to reimbursement of

5  their reasonable litigation costs of $56,457.44 (almost entirely expert consulting and mediation

6  costs), and Plaintiffs are entitled to a reasonable service awards of $2,500 each.

7  **II.  The Settlement Agreement's Provisions on Fees, Expenses, and Service Awards**

8  After the Parties reached agreement in principle with respect to the substantive terms of

9  the Settlement—including: (i) the proposed injunctive relief; (ii) the recognition of remedial

10  measures; and (iii) Google's representations and warranties—the Parties agreed that Class

11  Counsel may move the Court for Google to pay an award of reasonable attorneys' fees and

12  expenses. *See* Dkt. 64-1 ("Cuthbertson PA Decl."), ¶ 17.  Because this Settlement provides

13  injunctive relief only under Rule 23(b)(2), any award of attorneys' fees and expenses will not

14  come out of a common fund. *Id.*

15  Google reserves the right to oppose the amount requested, but both parties agree to

16  "accept, and not appeal," the Court's order on fees and expenses. *See* Dkt. 64-1, Ex. 1

17  ("Settlement Agreement"), § 9.1. Any appeal by a Settlement Class Member to the Court's order

18  on fees expenses will not "terminate or cancel this Settlement Agreement, nor affect or delay the

19  force and effect of the Final Approval Order." *Id.*, § 9.3.

20  In accordance with this agreement and as detailed below, Plaintiffs seek $1,958,208.00 in

21  fees and $56,457.44 in out-of-pocket litigation expenses. Plaintiffs also request service awards of

22  $2,500 each for their service to the Class—for a total of $5,000.

23  **III.  The Requested Attorney's Fees Are Fair, Reasonable, and Appropriate.**

24  In a class action, a court may award reasonable attorneys' fees as authorized by law or by

25  the parties' agreement. Fed. R. Civ. P. 23(h). Here, the Parties' agreement on fees is governed by

26  California law. *See* Settlement Agreement, § 9. Under California law, the lodestar method is "the

27  primary method" for awarding attorneys' fees. *Lealao v. Beneficial Cal., Inc.*, 97 Cal. Rptr. 2d

28  797, 803 (Ct. App. 2000). Similarly, federal courts apply the lodestar method in class actions

PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
CASE NO. 5:21-CV-03080-NC

1    where a significant component of the relief obtained is injunctive in nature. *In re Bluetooth*

2    *Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) ("The 'lodestar method' is

3    appropriate in class actions ... where the relief sought—and obtained—is often primarily

4    injunctive in nature and thus not easily monetized[.]"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

5    1029 (9th Cir. 1998) (lodestar method appropriate in "injunctive relief class actions"). Under the

6    lodestar method, courts multiply the number of hours reasonably expended by a reasonable

7    hourly rate. *Hanlon*, 150 F.3d at 1029 (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)); *Lealao*,

8    97 Cal. Rptr. 2d at 803. Courts regularly award multipliers of that lodestar that "reflect[] a host of

9    'reasonableness' factors" including the benefit obtained for the class, the complexity and risk of

10   the case, and the quality of the representation provided. *Laffitte v. Robert Half Int'l Inc.*, 376 P.3d

11   672, 676–77 (Cal. 2016).

12       Class Counsel's hours and rates are well-documented. In support of Plaintiffs' fee request,

13   Class Counsel submit a declaration with exhibits showing the timekeepers, the hours they devoted

14   to particular categories of work, and their rates. *See* Cuthbertson Fee Decl. Exs. A–B. Counsel's

15   fee request is comprised of a reasonable lodestar in the amount of $979,104.00, times a

16   reasonable and justified 2.0 multiplier.

17       **A.    Class Counsel incurred a reasonable lodestar.**

18            **1.    Class Counsel's hours worked are reasonable.**

19       In total, Class Counsel have thus far reasonably expended a total of 1,423.7 hours to

20   investigate, litigate, and negotiate a resolution of Plaintiffs' claims against Google. *See Bluetooth*,

21   654 F.3d at 941; *Laffitte*, 376 P.3d at 677. To determine the number of hours worked, Class

22   Counsel audited contemporaneously kept records for time devoted to prosecuting Plaintiffs'

23   claims from inception to resolution. Cuthbertson Fee Decl., ¶¶ 15–16. Further, in the exercise of

24   their discretion, Class Counsel excluded several categories of time entries, including among

25   others (i) duplicative, unnecessary, or irrelevant entries; (ii) entries entered by timekeepers who

26   recorded a *de minimis* amount of time;[1] and (iii) entries reflecting time spent in preparation of this

27

28   [1] As a result, there are only five time-keepers whose time is counted in the submitted lodestar
     totals. *See* Cuthbertson Fee Decl., ¶ 17.

1  motion. *Id.*, ¶ 17. Class Counsel's time records also necessarily exclude future efforts, including

2  preparation for the final approval hearing, ongoing work with the settlement administrator, and

3  monitoring implementation of the settlement's representations, warranties, and injunctive

4  provisions. *Id.*, ¶ 18.

5      ***Class Counsel's Efforts Were Reasonable and Necessary.*** Before commencing this

6  action, Class Counsel (assisted by consulting experts) conducted rigorous forensic analyses of the

7  EN System, and the mobile contact tracing applications ("Contact Tracing Apps") that relied on

8  it, to identify and interpret the information being collected by the EN System, and to determine

9  what was happening to it. *Id.*, ¶ 3. After researching the applicable law, Class Counsel filed a

10  complaint incorporating novel medical data privacy claims in order to rectify the alleged

11  misconduct. *Id.*, ¶ 4. Class Counsel then filed an amended complaint as of right, supported by

12  additional forensic investigation, in response to Google's first motion for dismiss and request for

13  judicial notice; drafted an opposition to Google's second motion to dismiss and request for

14  judicial notice; and first negotiated, then litigated issues relating to the protective order, questions

15  of overriding importance to Google. *Id.*, ¶ 5. Simultaneously, Class Counsel conducted an initial

16  case management conference and propounded a first round of discovery requests. *Id.*, ¶ 6.

17      Class Counsel also spent critical time working with Google and Google's counsel to

18  create an informal, expert-driven resolution process that catalyzed the Parties' eventual

19  settlement. *Id.*, ¶ 7. The novelty of the process—which among other things necessitated creating

20  and agreeing to rigorous protocols and procedures for the informal exchange of confidential

21  materials and agreeing on the list of topics Plaintiffs' consulting expert could address—required

22  dedicated time from Class Counsel in consultation with their consulting expert and Google's

23  counsel. *Id.*, ¶ 8. Class Counsel and their consulting technologist devoted substantial time

24  preparing for the informational session with Google; participating in the session; and then

25  reviewing and analyzing the information disclosed by Google during the session—which resulted

26  in significant, substantive follow-up inquiries, followed by further review and the exchange of

27  written materials and documentation. *Id.*, ¶ 9. This time spent by Class Counsel, which directly

28  led to the settlement, enabled the Parties to avoid a far greater number of hours drafting and

reviewing discovery, taking depositions, meeting and conferring, and litigating any discovery impasses. *Id.*, ¶ 10.

This vigorous and creative advocacy described above allowed Class Counsel to proceed to mediation with Google before the Hon. Read Ambler (Ret.) of JAMS, where the Parties were well-equipped to meaningfully negotiate and evaluate the terms of any proposed settlement. *Id.*, ¶ 11. The Parties conducted multiple in-person mediation sessions by Zoom, and negotiated as well between those sessions with Judge Ambler's oversight and guidance. *Id.*, ¶ 12. Class Counsel spent considerable time working with Google to craft meaningful injunctive relief for the Class that fixed the misconduct central to Plaintiffs' allegations, while also navigating the technological complexity of the subject matter and Google's concern for maintaining the confidentiality of sensitive proprietary information. *Id.*, ¶ 13. On February 18, 2022, the Parties executed a term sheet for the settlement of all of Plaintiffs' claims against Google. *See* Dkt. 59 (Notice of Settlement and Joint Stipulation to Stay the Case).

After negotiating and executing the Settlement Agreement, the Parties worked together to select a settlement administrator, and subsequently worked with the chosen settlement administrator to agree upon a notice plan and to ensure that notice to Class members would be effectively disseminated. Cuthbertson Fee Decl., ¶ 14. Though notice to a Rule 23(b)(2) class is not required under the Federal or Local Rules, the notice program substantially benefits the Class by informing Class members of the settlement and of their opportunity to appear and be heard at the final approval hearing. *Cf.* Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (June 30, 2022) (finding notice program satisfied Northern District's Procedural Guidance for Class Action Settlements) [hereinafter "*Preliminary Approval Order*"], Dkt. 71.

***Class Counsel's Efforts Were Efficient.*** Throughout their efforts, Class Counsel took all reasonable efforts to maximize efficiency. Cuthbertson Fee Decl., ¶ 19. As reflected in the attached timekeeping records, *see id.* Exs. A–B, Class Counsel prosecuted this action largely using a small (five-member) group of attorneys and support staff, who divided work on the case among them appropriately based on skill and experience. *Id.*, ¶ 19. Tasks were assigned with

clear instructions to avoid duplication of effort and to ensure that appropriately skilled personnel performed each task. *Id.* Class Counsel regularly monitored progress and ensured that tasks were performed in a timely and effective manner. *Id.* Class Counsel's targeted use of consulting expertise and the informal resolution process described above produced further efficiencies, permitting Class Counsel to evaluate the Class's legal claims and the proposed settlement without time-consuming formal discovery and without burdening the Court with any possible discovery disputes. *Id.*, ¶ 20. In sum, the time spent pursuing Plaintiffs' claims was reasonable and efficient, and critical to the success achieved in this action.

## 2.    Class Counsel's hourly rates are reasonable.

Class Counsel are highly experienced and well-regarded members of the bar. They have brought to this litigation their extensive experience in complex consumer class actions, particularly in the area of digital privacy. *See id.*, ¶¶ 35–48 (summarizing collective firm and individual attorney and paralegal experience, as well as work performed). This is especially so here. When Class Counsel filed suit against Google in April 2021, no other attorneys had attempted to hold Google liable for the misconduct alleged by Plaintiffs or apparently examined the alleged privacy vulnerabilities built into the EN System. *Id.*, ¶ 4.  Accordingly, their hourly rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11 (1984). Here, the relevant community is the Northern District of California. *See Lilly v. Jamba Juice Co.*, No. 13-CV-02998-JST, 2015 WL 2062858, at *5 (N.D. Cal. May 4, 2015).

Courts in this District have consistently approved Class Counsel's firm's rates. Cuthbertson Fee Decl., ¶ 24; *see, e.g.*, *In re Plaid Inc. Privacy Litig.*, No. 4:20-cv-03056 (N.D. Cal. July 20, 2022) (approving hourly rates of $610 to $1,025 for partners, $465 to $535 for associates, and $370 to $395 for paralegals and other support staff set forth by declaration at Dkts. 157-1, 182-3), Dkt. 184; *Roberts v. AT&T Mobility LLC*, No. 3:15-cv-03418 (N.D. Cal. Aug. 20, 2021) (approving rates of $510 to $1,000 for partners, $485 for associates, and $375 to $415 for paralegals and other support staff set forth by declaration at Dkt. 209-1), Dkt. 215; *McDonald v. Kiloo A/S*, No. 3:17-cv-04344 (N.D. Cal. Apr. 21, 2021) (approving hourly rates of

$615 to $975 for partners, $420 to $485 for associates, and $360 to $415 for paralegals and other support staff set forth by declaration at Dkt. 372-1), Dkts. 408, 408-1, 408-2, 408-3;[2] *In re Lithium Ion Batts. Antitrust Litig.*, No. 4:13-md-02420-YGR-DMR, 2020 WL 7264559, at *20 (N.D. Cal. Dec. 10, 2020) (approving hourly rates of $550 to $1,075 for partners, $480 to $535 for associates, and $355 to $495 for paralegals and other support staff set forth by declaration at Dkt. 2487-5); *In re Wells Fargo & Co. S'holder Deriv. Litig.*, 445 F. Supp. 3d 508, 527 (N.D. Cal. 2020) (approving hourly rates of $560 to $1,075 for partners, $395 to $510 for associates, and $345 to $495 for paralegals and other support staff set forth by declaration at Dkt. 278-7); *In re Pokémon Go Nuisance Litig.*, No. 3:16-cv-04300-JD (N.D. Cal. June 13, 2019) (approving rates of $715 to $950 for partners, $350 to $600 for associates, and $325 for paralegals set forth by declaration at Dkt. 137), Dkt. 142; *In re Intuit Data Litig.*, No. 15-CV-1778-EJD-SVK, 2019 WL 2166236, at *1 (N.D. Cal. May 15, 2019) (approving rates of $510 to $925 for partners, $510 for associates, and $375 to $390 for paralegals and other staff set forth by declaration at Dkt. 185); *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *17 (N.D. Cal. Aug. 17, 2018) (approving rates of $400 to $970 for partners, $185 to $850 for non-partner attorneys, and $95 to $440 for paralegals and other staff); *Campbell v. Facebook Inc.*, No. 4:13-cv-05996-PJH, 2017 WL 3581179, at *7 (N.D. Cal. Aug. 18, 2017) (approving rates of $575 to $900 for partners, $375 to $455 for associates, and $345 to $375 for paralegals and other staff set forth by declaration at Dkt. 239); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 3175924, at *4 (N.D. Cal. July 21, 2017) (approving rates "ranging from $250 to $1,650 for partners, $185 to $850 for associates, and $65 to $390 for paralegals"); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving rates "ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals").

---

[2] The court approved the same rates as against additional defendants in cases consolidated with the *Kiloo* action. *See Rushing v. The Walt Disney Co.*, No. 3:17-cv-04419 (N.D. Cal. Apr. 12, 2021), No. 3:17-cv-04344, Dkt. 408-4; *Rushing v. ViacomCBS Inc.*, No. 3:17-cv-04492 (N.D. Cal. Apr. 12, 2021), No. 3:17-cv-04344, Dkt. 408-5.

PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
CASE NO. 5:21-CV-03080-NC

1    Class Counsel's current hourly rates are as follows:

| Name | Position | Class Counsel's Hourly Rates |
|---|---|---|
| Michael Sobol | Partner | $1,025.00 |
| Douglas Cuthbertson | Partner | $665.00 |
| Melissa Gardner | Partner | $610.00 |
| Ian Bensberg | Associate | $485.00 |
| Ariana Delucchi | Paralegal | $395.00 |

Cuthbertson Fee Decl., ¶ 22.

**B.     Class Counsel's requested multiplier and overall fee request are reasonable.**

Once the lodestar has been fixed, courts "may increase or decrease that amount by applying" a multiplier that accounts for "a variety of . . . factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Laffitte*, 376 P.3d at 677; *see Bluetooth*, 654 F.3d at 942 ("the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment"). While Ninth Circuit law treats the lodestar as "presumptively . . . reasonable," *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008), multipliers are "far more common under California law," as California courts treat the lodestar as reflecting "the general local hourly rate for a *fee-bearing case*" but not as reflecting "any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider." *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 995 (N.D. Cal. 2017) (internal alteration omitted) (quoting *Weeks v. Baker & McKenzie*, 74 Cal. Rptr. 2d 510, 539 (Ct. App. 1998), and *Ketchum v. Moses*, 17 P.3d 735, 745 (Cal. 2001)). Class Counsel's requested 2.0 multiplier is reasonable under either standard.[3]

Ninth Circuit courts "commonly" award multipliers between 1.0 and 4.0 in "complex class action cases." *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, at *21 (N.D. Cal. Feb. 11, 2016); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th

---

[3] In support of preliminary approval, Class Counsel represented to the Court that they would not seek a multiplier higher than 2.0. *See* Dkt. 64 (PA Br.) at 14; Dkt. 64-1 (Cuthbertson PA Decl.), ¶ 20.

PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
CASE NO. 5:21-CV-03080-NC

Cir. 2002) (surveying cases and finding 83% of multipliers between 1.0 and 4.0, and 54% between 1.5 and 3.0); *Lourdes Lefevre v. Five Star Quality Care Inc.*, No. 5:15-cv-01305-VAP-SPx, 2021 WL 2389884, at \*5 (C.D. Cal. Jan. 7, 2021) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 265 (N.D. Cal. 2015) (same). Class Counsel's requested multiplier sits in the lower half of that range.

It is also well in line with multipliers approved in this District and by other district courts in the Ninth Circuit for settlements reached before class certification following initial briefing and discovery. For example, the court approved a 2.625 multiplier on a lodestar crosscheck in *Gergetz v. Telenav, Inc.*, No. 16-cv-04261-BLF, 2018 WL 4691169, at \*7 (N.D. Cal. Sept. 27, 2018). This putative class action under the federal Telephone Consumer Protection Act settled while a motion to dismiss was pending, and only "[l]ittle formal discovery had been completed." *Id.* at \*1, \*5. Similarly, a 3.5 multiplier was approved by the court on a lodestar crosscheck in *Pan v. Qualcomm Inc.*, No. 16-cv-01885-JLS-DHB, 2017 WL 3252212, at \*13 (S.D. Cal. July 31, 2017). This employment discrimination class action was settled after pre-suit negotiations which included a "voluntary exchange of information," "expert … analyses" of the information exchanged, and two days of mediation. *Id.* at \*2. A number of other cases approve multipliers of 2.0 or higher when putative class actions settle before class certification without fulsome discovery and related motion practice. *See, e.g.*, *Kutzman v. Derrel's Mini Storage, Inc.*, 2020 WL 5909151, at \*7, \*9, \*12 (E.D. Cal. Oct. 6, 2020) (approving 2.3 multiplier); *Uschold v. NSMG Shared Servs. LLC*, 2020 WL 3035776, at \*8, \*10, \*16 (N.D. Cal. June 5, 2020) (approving 4.0 multiplier); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at \*1, \*6, \*14 (N.D. Cal. Dec. 18, 2018) (approving 3.22 multiplier); *In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1131, 1134, 1136–37 (N.D. Cal. 2015) (approving 2.2 multiplier), *vacated on other grounds sub nom. Frank v. Gaos*, 139 S. Ct. 1041 (2019).

The specific factors supporting Class Counsel's requested multiplier and the reasonableness of Class Counsel's overall fee request follow below.

PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
CASE NO. 5:21-CV-03080-NC

1

**1.      Class Counsel obtained an excellent result.**

The reasonableness of a fee award "is determined primarily by reference to the level of success achieved by the plaintiff." *McCown v. City of Fontana*, 565 F.3d 1097, 1101–02 (9th Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). As explained previously in support of preliminary approval and in Plaintiffs' contemporaneously filed brief in support of final approval, Google's measures to remedy the alleged security vulnerabilities in its EN System, the legally binding representations and warranties made by Google, and Google's agreement to implement critical injunctive relief terms represent an excellent result for the Class. Indeed, this outcome in substantially the same injunctive relief Plaintiffs may have achieved after full success at trial on the merits: the alleged privacy invasions have been remedied, and Google is compelled to ensure that the remedy remains permanent. *See* Dkt. 64 (PA Br.) at 7–10, 13. Moreover, those results are achieved *now,* representing an immediate, permanent improvement to the privacy protections of a technology that will continue to play an important public health role in this country and abroad. This "primar[y]" determinant of the reasonableness of Class Counsel's fee strongly favors the requested multiplier. *McCown*, 565 F.3d at 1102. And while the settlement does not provide for monetary relief, Class members are not releasing any such claims. *Preliminary Approval Order* at 4.

**2.      This action raised novel and complex issues, and entailed substantial risk of nonpayment.**

This action presented highly novel and complex legal and factual issues premised on common law intrusion and disclosure claims and, for California class members, on Article 1, Section 1, of the California constitution and the CMIA. *See* Dkt. 25, Am. Compl. ¶¶ 148–98 (pleading four claims for relief). The concept of digital contact tracing only became widely known to the American public with the COVID-19 pandemic. *See* Muhammad Shahroz *et al.*, *COVID-19 digital contact tracing applications and techniques: A review post initial deployments*, 5 Transp. Eng'g 100072, at 2 (Sept. 2021) (discussing digital contact tracing as new approach), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8132499. Further, the technical details of the EN system itself are highly specialized and novel, and were not widely known or

analyzed. *See* Dkt. 25, Am. Compl. ¶¶ 25–43 (citing white papers for details of EN System's operation). As a result, Plaintiffs relied almost entirely on their own analysis, including among other things their consulting expert's pre-filing investigation forensics and an examination of Google's public-facing statements about the EN System. *See* Cuthbertson Fee Decl., ¶¶ 3–4.

Plaintiffs face substantial legal challenges as well, including arguments from Google that damages are too ephemeral or too individualized to warrant certification, and that a jury would not find Google's conduct to be an egregious violation of societal norms, resulting in little or no class-wide payments for the common law claims. *See* Dkt. 37 (Google MTD Brief) at 9–10, 12 (arguing Plaintiffs' allegations cannot support damages remedies for actual harm suffered); *id.* at 15–18 (arguing Plaintiffs' allegations did not plausibly allege highly offensive or egregious conduct). And while the CMIA sets forth statutory damages for California Class members, Google would also maintain that Plaintiffs have not met the requirements of that statute, including because the definition on which Plaintiffs chiefly rely had only recently been added to the CMIA, and Plaintiffs' basic theory for holding Google liable under the statute was untested. *See In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-mn-02972, 2021 WL 3568394, at *7 (D.S.C. Aug. 12, 2021) (describing 2013 amendments to now Cal. Civ. Code § 56.06(b)); Am. Compl. ¶¶ 179–95 (applying CMIA to Google and Google's conduct); Dkt. 37 (Google MTD Br.) at 18–24 (arguing Plaintiffs' allegations did not fit within applicable CMIA definitions). Plaintiffs also faced arguments from Google that they have no standing to proceed, including arguments concerning recent Supreme Court precedent that leaves this area of the law unsettled and difficult to predict. *See id.* at 9 (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021)). Finally, as previewed in the Parties' Rule 26(f) statements, Plaintiffs faced protracted, hard-fought litigation on basic questions of the scope of appropriate discovery. *See* Dkt. 27 (Joint Rule 26(f) Report) at 7–9. In short, the case entailed significant risk at every step from complaint to final judgment.

Courts have long recognized that attorneys should be rewarded "for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Wash. Pub. Power Supply Sys. Sec. Litig.* (*WPPSS*), 19 F.3d 1291, 1299 (9th Cir. 1994); *see also Vizcaino*, 290 F.3d at 1051. Here, Class Counsel prosecuted this action on a

1 purely contingent basis, despite the very real risk they might never be compensated. Cuthbertson

2 Fee Decl., ¶ 27. Class Counsel also forewent opportunities to work on other cases in order to

3 devote the appropriate time and resources necessary to handle these matters. *See Vizcaino*, 290

4 F.3d at 1050; *In re Heritage Bond Litig.*, No. 02-ml-1475-DT, 2005 WL 1594403, at *21 (C.D.

5 Cal. June 10, 2005).

6       With respect to risk multipliers generally, the Ninth Circuit has held that counsel are

7 entitled to *some* positive multiplier "when (1) attorneys take a case with the expectation they will

8 receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and

9 (3) there is evidence the case was risky." *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016)

10 (citing *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016)). Each of these

11 factors is met here: Class Counsel filed this case expecting, if successful, a return on investment

12 that reflects this action's novelty and risk; Class Counsel's hourly rates used in the lodestar

13 calculation reflect their rates for non-contingent work; and the case was exceptionally risky, as

14 detailed above. *See* Cuthbertson Fee Decl., ¶ 23. Accordingly, this factor strongly favors Class

15 Counsel's requested 2.0 multiplier.

16       **3.**    **Class Counsel provided high-quality representation in devising and**
   **executing an innovative and creative resolution process, and zealously**
17          **represented Class members' interests.**

18       Class Counsel brought their wealth of experience and skill to bear in this action. As

19 explained above, Class Counsel vigorously represented the interests of Plaintiffs and Class

20 members throughout the litigation. *See* Section III.A.1, *supra*; *see also* Final Approval Mot.

21 Section VII.B.1 (filed contemporaneously). Class Counsel's innovative and creative advocacy

22 made possible the informal resolution process that drove this litigation so quickly and efficiently

23 to resolution for the benefit of the entire Class. *See* Cuthbertson PA Decl. ¶¶ 4–9. As a result,

24 Class Counsel ensured the settlement—agreed to after serious, informed arm's-length

25 negotiations led by the Hon. Read Ambler (Ret.) of JAMS—was the product of well-informed

26 negotiations. Given the novelty of the early resolution process employed by Class Counsel, its

27 merits will not have been factored into Class Counsel's hourly rates, and its efficiency operated to

28 decrease rather than increase the number of hours expended by Class Counsel. Accordingly, this

1   factor favors Class Counsel's requested multiplier without risk of double counting the value of

2   Class Counsel's skill and experience "encompassed in the lodestar." *Ridgeway*, 269 F. Supp. 3d

3   at 996 (quoting *Ketchum*, 17 P.3d at 746).

4           **4.      The Ninth Circuit has urged district courts to discourage lodestar-
                      padding and promote efficiency, especially where counsel obtains
5                      timely relief for a class in immediate need of it.**

6           The Ninth Circuit has observed that "the lodestar method does not reward early

7   settlement," "creates incentives for counsel to expend more hours than may be necessary on

8   litigating a case," and should not be employed so that class counsel "necessarily receive a lesser

9   fee for settling a case quickly." *Vizcaino*, 290 F.3d at 1050 n.5. To the contrary, "it may be a

10  relevant circumstance that counsel achieved a timely result for class members in need of

11  immediate relief." *Id.* This Court has endorsed this reasoning, *see Johnson v. Fujitsu Tech. & Bus.*

12  *of Am. Inc.*, No. 16-cv-03698-NC, 2018 WL 2183253, at *7 (N.D. Cal. May 11, 2018) (Cousins,

13  J.), and it applies with full force to this case.

14          In light of the on-going pandemic, privacy-protective digital contact tracing now is far

15  more important than other uncertain outcomes that Plaintiffs *might* have secured after expending

16  hundreds or thousands more hours of attorney time and dozens more hours of Court time. Indeed,

17  the swiftness and efficiency of the favorable result obtained by Class Counsel for the Class is one

18  of the primary virtues of the Parties' settlement. The Court should encourage this exact kind of

19  settlement by awarding Class Counsel their requested reasonable multiplier in light of the

20  excellent results achieved, especially because they did so without significant additional

21  expenditures of time and a correspondingly larger lodestar. This Class was "in need of immediate

22  relief" and Class Counsel's efforts on its behalf were "timely." *Vizcaino*, 290 F.3d at 1050 n.5.

23          This Court's small number of cases holding that counsel in those cases were not entitled to

24  a lodestar multiplier are readily distinguishable in light of the factors discussed above. In *Shin v.*

25  *Plantronics, Inc.*, a false advertising case, the Court declined to apply a multiplier to counsel's

26  lodestar (already adjusted downward in light of counsel's "unreasonable" hours expended) where,

27  though the results achieved were "significant," the case was settled early and the issues were not

28  "novel or complex." No. 18-cv-05626-NC, 2020 WL 510348, *2–3 (N.D. Cal. Jan. 31, 2020)

1    (Cousins, J.). In this case, by contrast, and as described above, the issues were exceptionally

2    novel and complex, justifying a multiplier under the *Stetson* line of cases in the Ninth Circuit. *See*

3    *Stetson*, 821 F.3d at 1166. In *In re N.C.A.A. Athletic Grant-in-Aid Cap Antitrust Litigation*, the

4    Court declined to award a multiplier where the quality of the representation and complexity of the

5    case were "already reflected" in counsel's lodestar, and the injunctive success "was quite

6    limited." No. 14-md-02541-CW (NC), 2019 WL 12194763, at *5 (N.D. Cal. Dec. 6, 2019)

7    (Cousins, J.). Here, by contrast, as described above, the skilled representation that conceived and

8    implemented the Parties' innovative early resolution process is not reflected in Class Counsel's

9    lodestar, and the injunctive success was total, nothing less than Plaintiffs could have expected

10   after trial on the merits. Finally, in *O'Bannon v. N.C.A.A.*, counsel's success was likewise partial:

11   plaintiffs failed to certify a damages class, and former student-athletes who had been injured by

12   the defendant's anticompetitive conduct would not benefit from the injunction obtained. 114 F.

13   Supp. 3d 819, 840 (N.D. Cal. 2015), *report and recommendation adopted in relevant part*, No. C

14   09-3329, 2016 WL 1255454, at *12 (N.D. Cal. Mar. 31, 2016) (Wilken, J.). Here, by contrast,

15   injured Class members will benefit from the injunction and the Class has not lost any entitlement

16   to damages it may have, as claims for monetary relief are not released by the Settlement

17   Agreement.

18        This Court's decision in *Johnson* is a better guide here than the three cases discussed

19   above. In *Johnson*, the Court on a lodestar cross-check sustained a 4.375 multiplier (greater than

20   the 4.0 multiplier at the highest end of the 1-to-4 range "commonly" awarded in "complex class

21   action cases," *Destefano*, 2016 WL 537946, at *21) in light of counsel's exclusion from their

22   lodestar of "additional time on the settlement approval motion" and "given the relatively early

23   settlement." *Johnson*, 2018 WL 2183253, at *7 (citing *Vizcaino*, 290 F.3d at 1050 n.5). Like the

24   *Johnson* counsel, Class Counsel here have excluded hours billed preparing this motion, and after

25   July 27, 2022, generally, from their lodestar, Cuthbertson Fee Decl. ¶ 17, and Class Counsel's

26   skillful and innovative representation produced "timely" relief for a Class in immediate need of it.

27   *Vizcaino*, 290 F.3d at 1050 n.5.

28                                              ***

In sum, in light of the results achieved; the novelty, complexity, and risk presented by the case; the quality of the representation provided; decisions in similar cases; and the Ninth Circuit's direction not to punish efficient settlement of disputes, Class Counsel's requested multiplier of 2.0 is reasonable, as is their overall fee request.

## IV.     Class Counsel's Litigation Expenses Are Reasonable and Should Be Reimbursed.

Class Counsel are entitled to reimbursements of the expenses they reasonably incurred investigating and prosecuting this matter. *See Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003); *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970)). Through August 2, 2022, Class Counsel have incurred $56,457.44 in out-of-pocket litigation expenses for which they seek reimbursement. These amounts are comprised almost entirely of expert consulting costs, incurred both at the pre-filing and informal discovery stages, and mediation costs. *See* Cuthbertson Fee Decl., ¶¶ 30–31. These costs were reasonably necessary for the continued prosecution and resolution of this litigation and were incurred for the benefit of Class members with no guarantee of recovery. As described above, *see* Section III.A.1, *supra*, Class Counsel's consulting expert costs are especially reasonable in light of the efficiencies they created in permitting Class Counsel to evaluate and settle the Class's legal claims without time-consuming formal discovery. The Court should approve reimbursements of these reasonable, critical expenses.

## V.     The Requested Service Awards Are Reasonable.

In accordance with the settlement, Plaintiffs seek service awards of $2,500 each. Such awards are "fairly typical" in class action cases and are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). In evaluating the reasonableness of service awards, courts should consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Roes, 1–2 v. SFBSC Mgmt. LLC*, 944 F.3d 1035, 1057 (9th Cir. 2019). Ninth Circuit

1  courts routinely approve similar awards. *See, e.g.*, *Ronquillo-Griffin v. TransUnion Rental*

2  *Screening Sols. Inc.*, 2019 WL 2058596, at *11 (S.D. Cal. May 9, 2019) ($3,000); *Terry v.*

3  *Hoovestol Inc.*, 2019 WL 2061105, at *7 (N.D. Cal. May 9, 2019) ($2,500). Indeed, Ninth Court

4  courts "have found that $5,000 is a presumptively reasonable service award." *Carlin v.*

5  *DairyAmerica Inc.*, 380 F. Supp. 3d 998, 1024 (E.D. Cal. 2019) (citing *Harris v. Vector Mktg.*

6  *Corp.*, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012)).

7      Here, the named Plaintiffs played a unique and pivotal role by taking the extraordinary

8  step of putting their private medical history at issue in the litigation in order to gain protections

9  for others amid the ongoing pandemic and for the benefit of the class. *See* Cuthbertson Fee Decl.,

10  ¶ 33.  Each Plaintiff devoted extensive time and energy to this action among other ways by:

11  (i) providing information to Class Counsel that informed the complaints; (ii) regularly

12  communicating with Class Counsel about strategy and major case developments; (iii) providing

13  their mobile devices (which contain highly sensitive and important personal information) to Class

14  Counsel, so that those devices could be forensically imaged and safely preserved for discovery

15  purposes; and (iv) reviewing Google's technical disclosures as part of the settlement process and

16  the proposed settlement terms. *Id.*, ¶ 34. In light of their contributions, these awards are eminently

17  reasonable and supported by law.

18  **VI.**    **Conclusion**

19      For the reasons given above and as reflected in the Proposed Order filed herewith,

20  Plaintiffs request that the Court approve an award of $1,958,208.00 in reasonable attorneys' fees

21  and reimbursements of $56,457.44 in reasonable expenses. Plaintiffs also request that the Court

22  approve service awards of $2,500 each for their service to the Class—for a total of $5,000.

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: August 4, 2022

Respectfully submitted,

*/s/ Douglas Cuthbertson*
Douglas Cuthbertson (*pro hac vice*)
dcuthbertson@lchb.com
Nicholas Diamand (*pro hac vice*)
ndiamand@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: 212.355.9500
Facsimile: 212.355.9592

Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Ian R. Bensberg (*pro hac vice*)
ibensberg@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

2434711.7

PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
CASE NO. 5:21-CV-03080-NC